**Louise A. ELMORE, Plaintiff/Appellant,**

v.

**TRAVELERS INSURANCE CO., Defendant/Appellee.**

Supreme Court of Tennessee, at Nashville.

Jan. 27, 1992.

George E. Copple, Jr., Nashville, for plaintiff/appellant.

Michael J. Philbin, William G. McCaskill, Jr., Adams, Taylor, Philbin, Pigue & Marchetti, Nashville, for defendant/appellee.

OPINION

ANDERSON, Justice.

In this worker's compensation case, the trial judge found that the plaintiff did not

suffer permanent disability as a result of a work-related injury and dismissed the claim. The plaintiff appeals, contending the evidence preponderates against the trial judge's finding. After reviewing the record, we affirm the trial court's judgment.

## FACTUAL BACKGROUND

On December 8, 1988, the plaintiff, Louise Elmore, went to work for O'Charley's Restaurant in Brentwood, which was insured for worker's compensation by the defendant, Travelers Insurance Company. While working as a waitress on December 21, 1988, the plaintiff slipped and fell, landing on her buttocks and back. She was immediately taken by a supervisor to meet her chiropractor, Dr. Thaddeus Swiatek, at his office. Dr. Swiatek diagnosed her problem as acute lumbosacral strain, began a course of treatment, and allowed the plaintiff to return to work. On February 16, 1989, he released her with no residual impairment. She missed four days of work before she quit her job on April 2, 1989. After leaving her job at O'Charley's, the plaintiff held various other jobs, but she says she has had difficulty performing them because of back pain.

The plaintiff first saw Dr. Swiatek on December 19, 1988, two days before her fall at O'Charley's. When she arrived at Dr. Swiatek's office, she filled out a case history questionnaire. On this questionnaire, she noted that she had been in two previous automobile accidents and cited her major complaint as "lower back soreness ( & tailbone) & mid-back, neck, & between shoulder blades—stiff." She also answered affirmatively questions asking whether she had recently experienced neck pain or spasm, mid-back pain, and low back pain or spasm.

The plaintiff did not see Dr. Swiatek on a regular basis again until June of 1989. After walking around the Summer Lights Festival in Nashville for several hours and working out on Nautilus equipment, she complained to Dr. Swiatek of pain in her legs and back. Following this incident, Dr. Swiatek treated the plaintiff regularly until August of 1990. During this period, Dr. Swiatek noted significant instability and loss of motion in the plaintiff's neck and back. He thought her work-related fall had resulted in a permanent back injury and assessed her present disability at 15 percent of the body as a whole.

In August of 1990, the plaintiff became dissatisfied with Dr. Swiatek and went to see another chiropractor, Dr. Lensgraf, upon the recommendation of her attorney. Her problem was diagnosed by Dr. Lensgraf as "a chronic cervical and lumbar strain/sprain type syndrome." He thought she had a permanent partial disability of 9 to 11 percent, and also thought that her condition was not caused by walking around Summer Lights or working out, but rather by the work-related fall.

Dr. John C. McInnis, a board certified orthopedic surgeon who had trained at Mayo Clinic, first examined the plaintiff on August 31, 1989, after it was reported to her employer that she was claiming that her condition was related to the O'Charley's fall. She selected his name from a list of orthopedic surgeons supplied to her by the defendant. Dr. McInnis also examined her three other times, twice in December of 1989 and once in May of 1990.

During these examinations, Dr. McInnis performed a number of diagnostic tests, including x-rays, a bone scan, and a CT scan of the low back, all of which he found to be normal. In addition, Dr. McInnis reviewed x-rays taken by Dr. Swiatek and performed his own range of motion tests. He found the x-rays taken by Dr. Swiatek to be normal, and determined that the plaintiff's range of cervical and lumbar motion was within normal limits. He found no muscle spasms, muscle atrophy, back inflammation, nerve root problems, or disc pathology. Based upon his examinations, Dr. McInnis was of the opinion that the plaintiff suffered no permanent partial impairment as a result of her work-related fall.

The evidence at trial on November 7, 1990, revealed that the plaintiff had suffered from drug and alcohol addictions at an early age, but now considers herself

recovered. She moved to California at age 20 and lived there approximately 11 years. While there, she held a number of secretarial and sales jobs, only one of which she held for over one year. Also while there she was involved in two automobile accidents.

The first accident occurred in 1984, and resulted in injuries to her upper back, shoulders, and neck. She was treated by a physician and thereafter a physical therapist, who introduced her to holistic medicine. Later, she began seeing a chiropractor-nutritionist and began using chiropractic care to "increase my general sense of vitality and well being."

Her second accident occurred on August 29, 1988, shortly before the plaintiff's move to Tennessee. She described this accident as minor, but said she did experience some soreness in her neck afterwards and had it checked by her chiropractor.

She moved to Tennessee on September 15, 1988, and sought the services of a local chiropractor. She established a relationship with Dr. Ken McIntosh, who treated her from September 30 until December 14, 1988. Thereafter, the plaintiff changed her chiropractic care over to Dr. Swiatek, a newly-licensed chiropractor whose wife was a fellow employee at O'Charley's.

## TRIAL COURT FINDING

The trial judge found that the plaintiff suffered a compensable injury during the course of her employment on December 21, 1988, but "failed to carry her burden of proof (1) that she suffers any permanent disability, and (2) that the December 21 accident proximately caused her current condition." In that connection, the trial judge commented in her memorandum opinion:

> In making its finding, the Court has given more weight to the testimony of Dr. McInnis and the opinion of Dr. Swiatek at the time he originally released plaintiff, and little to all other opinions, based on their experience, methods used, the time frames of the examinations, the lack of knowledge of plaintiff's complete medical history, and other factors. Since

no permanent disability has been established by medical testimony, the Court has not had to consider at all the psychologist's testimony regarding vocational disability.

> The Court specifically notes that plaintiff had experienced back pain in some form since her 1984 auto accident. Both before, during, and since her accident and recovery, she has regularly chosen to receive chiropractic treatment. She did not specifically reveal her past history, or her 1988 accident, to any doctors who treated her *after* her fall. In June, 1989, plaintiff through her work on nautilus equipment and her activities at Summer Lights experienced a new injury and/or symptoms of pain which have not been shown to relate causally to the December, 1988 accident.

(Emphasis in original.) The trial judge dismissed the plaintiff's complaint, holding that she was not entitled to any permanent partial disability benefits or additional medical expenses.

■ Our review of findings of fact by the trial court is *de novo* upon the record of the trial court, accompanied by a presumption of the correctness of the findings unless a preponderance of the evidence is otherwise. Tenn.Code Ann. § 50–6–225(e) (1983 & Supp.1991); *Lollar v. Wal–Mart Stores, Inc.,* 767 S.W.2d 143, 149 (Tenn. 1989).

## PREPONDERANCE OF THE EVIDENCE

■ The plaintiff argues the trial court erred in finding that she did not suffer permanent disability as a result of her work-related fall. It is well settled in Tennessee that a plaintiff in a worker's compensation suit has the burden of proving every element of the case by a preponderance of the evidence. *Talley v. Virginia Insurance Reciprocal,* 775 S.W.2d 587, 591 (Tenn.1989). In order to meet this burden, "[t]his Court has consistently held that causation and permanency of a work-related injury must be shown in most cases by expert medical evidence." *Tindall v. War-*

*ing Park Ass'n,* 725 S.W.2d 935, 937 (Tenn. 1987).

The plaintiff contends the medical evidence presented at trial clearly demonstrates she suffered a permanent impairment as a result of her work-related fall. She argues the trial judge denied her claim for benefits by erroneously finding that her back problems resulted not from the work-related fall, but rather from the previous auto accidents and subsequent activities. The plaintiff contends that she suffered a compensable aggravation of her pre-existing condition and that the problems surfacing after her workouts and her attendance at Summer Lights were a direct and natural consequence of the compensable work-related fall.

While it is true that aggravation of a pre-existing condition is compensable, *Bailey v. Liberty Mutual Ins. Co.,* 766 S.W.2d 496, 498 (Tenn.1989), the trial judge specifically found that she was not relying on a theory of pre-existing injury to deny the plaintiff's claim. The trial judge did find the plaintiff suffered a compensable injury on December 21, 1988. In addition, although a later injury is compensable when it is shown to be a direct and natural consequence of the original compensable injury, *Jones v. Huey,* 210 Tenn. 162, 357 S.W.2d 47 (1962), there is substantial evidence in the record to demonstrate that the plaintiff's back problems resulted from non-work-related activities five months after she was released from worker's compensation with no residual impairment by her treating chiropractor.

In holding that the plaintiff suffered no permanent impairment as a result of a work-related injury, the trial judge gave more weight to the testimony of Dr. McInnis and the opinion of Dr. Swiatek at the time he originally released the plaintiff. In a worker's compensation case, the trial court has discretion to accept the opinion of one medical expert over that of another. *Johnson v. Midwesco, Inc.,* 801 S.W.2d 804 (Tenn.1990). When exercising this discretion, the trial judge is "allowed, among other things, to consider the qualifications of the experts, the circumstances of their examination, the information available to them, and the evaluation of the importance of that information by other experts." *Orman v. Williams Sonoma, Inc.,* 803 S.W.2d 672, 676 (Tenn.1991).

Moreover, although most of the medical testimony was presented by deposition, the trial judge heard live testimony from the plaintiff and Dr. Lensgraf. When testimony is presented by deposition, this Court is in just as good a position as the trial court to judge the credibility of those witnesses. Where the trial judge has seen and heard witnesses, however, especially where issues of credibility and weight of oral testimony are involved, this Court must still give considerable deference to those circumstances. *Landers v. Fireman's Fund Ins. Co.,* 775 S.W.2d 355, 356 (Tenn.1989).

Our review of the record convinces us that the evidence does not preponderate against the trial court's finding that the plaintiff failed to prove any permanent disability as a result of her work-related fall.

## EXCLUSION OF MEDICAL TESTIMONY

The plaintiff argues the trial judge erred in admitting the medical proof of Dr. McInnis, because he did not follow the AMA Guidelines in assessing permanent impairment, or use an inclinometer to measure range of motion. We disagree.

The decision of whether to admit expert testimony into evidence rests within the sound discretion of the trial judge. *Shelby County v. Barden,* 527 S.W.2d 124, 131 (Tenn.1975). Dr. McInnis examined the plaintiff for the purpose of determining whether she suffered a permanent disability as a result of her work-related fall. Because he did not find any permanent disability, Dr. McInnis was not required to go further and utilize the AMA Guidelines to assign the plaintiff a permanent disability rating to make his testimony competent. The trial judge did not abuse her discretion in admitting Dr. McInnis's testimony on the issues of permanency and causation.

Finally, the plaintiff contends the trial court erred in excluding the physical therapist's testimony on causation. The plaintiff contends that it is well within a physical

therapist's expertise to give an expert opinion on whether a certain injury was caused by a work-related incident.

■ This Court has previously held that a physical therapist is not qualified to give an expert opinion on the permanent impairment or permanent physical restrictions of an injured person. *See Bolton v. CNA Ins. Co.*, 821 S.W.2d 932 (Tenn.1991). Since both permanency and causation of a work-related injury must be shown in most cases by expert medical evidence, *Tindall v. Waring Park Ass'n, supra*, the rationale of *Bolton v. CNA* applies with equal force to a physical therapist's opinion on medical causation. As a result, we conclude that the trial judge properly excluded the physical therapist's testimony on this issue.

Accordingly, we affirm the judgment of the trial judge. The costs of this appeal are assessed to the plaintiff.

REID, C.J., and DROWOTA, O'BRIEN and DAUGHTREY, JJ., concur.