529 S.E.2d 301

**Judy MIZELL and John Mizell, Appellants,**

v.

**Dr. Alfred L. GLOVER and Alpine Podiatry Center, P.A., Respondents.**

No. 3134.

Court of Appeals of South Carolina.

Heard Feb. 8, 2000.

Decided March 20, 2000.

Rehearing Denied May 6, 2000.

Randall M. Eason, of Lancaster; and Gilbert Scott Bagnell, of Columbia, for Appellants.

Montieth P. Todd, of Sowell, Todd, Laffitte, Beard & Watson, of Columbia, for Respondents.

GOOLSBY, Judge:

John and Judy Mizell brought this medical malpractice action against Dr. Alfred L. Glover, a podiatrist, and Alpine Podiatry Center, his professional association, alleging Dr. Glover committed malpractice in his treatment of Judy Mizell. John Mizell asserted a claim for loss of consortium. The jury returned a verdict for Dr. Glover. The Mizells appeal. We affirm.

## FACTS

On March 2, 1993, Judy Mizell sought treatment from Dr. Alfred Glover for corns that appeared between her fourth and fifth toes. Dr. Glover diagnosed the condition as "hammertoes," and debrided the area to provide temporary relief. On March 11, 1993, Dr. Glover performed hammertoe surgery on Mizell, but Mizell's condition worsened after surgery. She experienced pain, swelling, discoloration, and temperature changes in her foot, and noticed the tendons in her second and third toes had begun to contract. On April 27, 1993, Dr. Glover performed a capsulectomony and extensor tenotomy to release the contracture of the second and third toes.

Mizell still suffered from foot pain and swelling, however, and subsequently developed a lump on the underside of her

foot. Dr. Glover diagnosed the lump as a Morton's neuroma and removed it on June 1, 1993. Mizell continued to experience pain and temperature changes in her foot, so Dr. Glover referred her to her family doctor to rule out lupus or any other systemic problems.

Mizell sought treatment from Dr. Lowell Gill, an orthopedic surgeon with the Miller Orthopedic Clinic in Charlotte, who diagnosed her condition as that of Reflex Sympathetic Dystrophy (RSD). RSD is characterized by severe pain, swelling, color and temperature changes in the affected area, and if gone undiagnosed, can lead to an inability to move the part or extremity. Dr. Gill encouraged Mizell to use her foot by giving her prescription shoes to relieve the pain. He also arranged to see her again in two months, but at the subsequent visit on September 28, 1993, Dr. Gill noticed Mizell had experienced some deterioration in her condition.

Mizell did not return to Dr. Gill for treatment; instead, she went to Southeast Pain Management Center and saw Dr. Joshua Miller. Dr. Miller agreed with the assessment of RSD and recommended a sympathetic block. The Pain Center administered the block which gave Mizell some relief, albeit incomplete relief. Mizell was then given the option of running a wire in her spine and wearing a box to control the pain, but she rejected that upon learning there was a risk of paralysis.

The Mizells filed this complaint dated February 28, 1996, asserting claims of negligence and loss of consortium. The jury returned a verdict for Dr. Glover and his professional association. No post-trial motions were made by the Mizells. At issue was whether Dr. Glover's treatment caused Mizell to suffer from RSD and whether he failed to timely diagnose the disease.

## ISSUES

I. Did the trial court err in admitting a jury interrogatory which found the expert witness for the Mizells, Dr. Sheldon Marne, committed fraud because the interrogatory was not part of the judgment and could not be appealed?

II. Did the trial court err in excluding Dr. John Buckholz's article on RSD because it was his own prior statement and conflicted with his testimony?

III. Did the trial court err in permitting Dr. Dennis Martin to testify concerning the treatment provided at the Pain Center because his training was limited to that of a podiatrist?

IV. Did the trial court err in qualifying Dr. Glover's expert witness Dr. Buckholz, because he was not familiar with the appropriate standard of care?

## LAW/ANALYSIS

### I. Cross–Examination about Interrogatory Finding Misrepresentation by Dr. Marne[1]

The Mizells argue the trial court erred in admitting a jury interrogatory finding that Dr. Sheldon Marne, one of their expert witnesses, committed fraud because the interrogatory did not form part of a judgment against Marne and thus, was not appealable. I disagree.

In 1991, Minnesota Mutual Life Insurance Company sued Dr. Marne for allegedly making false statements regarding a claim he had filed. At trial, a Florida jury was asked by jury interrogatory if Dr. Marne had made misrepresentations to his insurance company. The jury replied that he had. The jury was then asked if Dr. Marne committed fraud. The jury replied that the fraud claim could not survive because of a statute of limitations problem. After the jury interrogatories were returned, the court entered a formal judgment that did not include fraud. While a motion for new trial was pending, the parties settled the matter.

Immediately before Dr. Marne testified in the case at bar, the Mizells filed a motion in limine to "exclude evidence relating to a lawsuit involving Sheldon Marne ... because while a motion for a new trial was pending, the parties agreed

---

1. Judge Connor has filed a separate concurring opinion holding the Mizells failed to preserve this issue for appellate review and any alleged error in admitting the jury interrogatory was harmless. Because Judge Howard agreed with Judge Connor's view on this issue, Judge Connor's concurrence is the majority opinion.

to settle the matter for a compromised figure, thus there was no final judgment in the case."[2] The Mizells argued before the court that only matters making up a final judgment would have been appealable, and because the fraud claim did not make up a part of the final judgment and was thus not appealable, evidence relating to it should be excluded at this trial.

Dr. Glover countered that the testimony was admissible as a matter affecting the credibility of a witness under Rule 608, SCRE. The trial court considered this motion just prior to Dr. Marne's testimony at trial and concluded the content of the interrogatory was admissible under Rule 608.

On direct examination, the Mizells asked Dr. Marne "what kind of baggage [came] with him" to trial. Dr. Marne replied that "four years after my partially disabled time [from my heart catheterization,] the insurance company decided that they would sue me for the partial disability claiming it was fraudulent." When asked if he had to reimburse the insurance company for his claim, Dr. Marne did not say yes; instead, he replied that the case was "annoying" because he "could have settled it for $40,000 but went to trial because he felt that he had [done] nothing wrong." Dr. Marne continued, stating he ended up with a $95,000 judgment which he intended to appeal, but the insurance company settled for $80,000. At no time did Dr. Marne explain that the jury would have found him liable for fraud. but for the statute of limitations problem.

On cross-examination, Dr. Glover asked Dr. Marne whether a Florida jury had found that Dr. Marne had deliberately and knowingly made material misrepresentations to his insurance company to obtain benefits under an insurance policy. Dr.

---

2. The Mizells state in their brief that the motion was initially presented and denied in chambers. To preserve the issue for review, the Mizells again raised the issue immediately prior to Dr. Marne's testimony. Dr. Glover argues the issue was not preserved because the Mizells failed to contemporaneously object to the testimony during cross-examination. We reject Dr. Glover's argument. The Mizells were not required to object during the testimony because the trial judge had denied their motion in limine moments before the witness testified. *See State v. Mueller*, 319 S.C. 266, 460 S.E.2d 409 (Ct.App.1995) (ruling on admissibility of evidence immediately before witness took stand was not motion in limine but a final ruling which preserved issued for review).

Marne acknowledged that was correct. Dr. Glover then asked if the jury had found that he committed insurance fraud, but Dr. Marne replied that this was not correct as there was a statute of limitations problem in that finding. Dr. Marne reiterated his belief that "had [the jury] found [fraud, he] would have appealed that decision ... because [he] thought [he] was right." Dr. Glover closed the line of questioning by reading the interrogatory, reading the jury verdict that stated the jury had found Dr. Marne committed fraud, and asking Dr. Marne if that was an accurate account of what had transpired. Dr. Marne replied that it was. Only after Dr. Glover read the interrogatory did Dr. Marne concede the jury had found he had committed fraud.

The Mizells argue on appeal the court erred in admitting the content of the jury interrogatory because it did not form a part of the final judgment and was thus not appealable.[3] I disagree. Simply because the jury interrogatory was not reduced to a final judgment does not mean that the information was inadmissible. The trial court correctly ruled the content of the interrogatory was admissible pursuant to Rule 608(b) as it concerned Dr. Marne's character for truthfulness or untruthfulness.

Rule 608(b) provides that specific instances of a witness's conduct may be inquired into on cross-examination at the discretion of the judge for the purpose of attacking or supporting the witness's credibility when it concerns the witness's character for truthfulness or untruthfulness.[4] These instanc-

---

3. On appeal, the Mizells also argue the content of the jury interrogatory was inadmissible hearsay because it did not form a part of the final judgment. This issue is not preserved for appeal. Rule 803(23), SCRE, excepts from the general hearsay rule "[j]udgments as proof of matters of personal, family or general history, or boundaries, essential to the judgment, if the same would be provable by evidence of reputation." The Mizells never cited the rule in their motion in limine or in their argument before the trial court. Their argument was not that the issue was inadmissible because it did not form a part of the final judgment and was thus hearsay. Instead, their argument was that the issue was never included in a final judgment and was thus not appealable. *See Hanahan v. Simpson*, 326 S.C. 140, 485 S.E.2d 903 (1997) (appellant may not argue a different ground on appeal than he argued in his objection at trial).

4. Rule 608, SCRE.

es, however, may not be proved by extrinsic evidence.[5]

The Mizells contend that the content of the interrogatory amounted to extrinsic evidence. I disagree. "Evidence is 'extrinsic' if offered through documents or other witnesses, rather than through cross-examination of the witness himself or herself."[6] Here, Dr. Glover produced no documents, such as the jury interrogatory itself, and no witnesses to impeach Dr. Marne's testimony. Instead, Dr. Glover introduced the contents of the jury interrogatory through cross-examination—the method permitted under the rule.

The Mizells' narrow approach to the rule would foreclose an examiner from questioning a witness on any specific act of misconduct that did not lead to a judgment against a party. The focus of Rule 608(b), however, is not on the type of evidence that is admitted, *i.e.* a civil judgment or a criminal conviction; instead, the focus of the rule is on the purpose for which the evidence is introduced. Rule 608(b) permits inquiry into acts of misconduct that indicate a lack of truthfulness, such as fraud.[7]

Federal courts, construing the virtually identical Rule 608(b) of the Federal Rules of Evidence have held judicial findings regarding a witness's untruthfulness to be probative of the witness's veracity even when these findings are not reduced to judgment. In *United States v. Terry*,[8] the Second Circuit found no impropriety in the prosecutor's cross-examination of

---

5.  *Id.; State v. Joseph*, 328 S.C. 352, 491 S.E.2d 275 (Ct.App.1997), *cert. granted*, (July 17, 1998).

6.  4 Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence § 608.20[1] (Joseph M. McLaughlin ed., Matthew Bender 2d ed.1999). *See also United States v. Lashmett*, 965 F.2d 179, 184 (7th Cir.1992) (stating no extrinsic evidence may be introduced to prove an act of dishonesty; "only cross-examination may be employed in attempting to expose dishonest acts").

7.  *See generally United States v. Gay*, 967 F.2d 322 (9th Cir.), *cert. denied*, 506 U.S. 929, 113 S.Ct. 359, 121 L.Ed.2d 272 (1992) (holding that evidence of prior fraud is considered probative of a witness's character for truthfulness or untruthfulness); *United States v. Amahia*, 825 F.2d 177 (8th Cir.1987) (permitting cross-examination concerning defendant's insurance fraud even though state had not charged him with act).

8.  702 F.2d 299 (2nd Cir.1983).

a voice expert witness regarding a district judge's criticism of the expert's testimony in other cases as being "unworthy of belief." [9] The same court also permitted cross-examination into an immigration judge's finding that an appellant's testimony was not credible because of his political activities. [10]

In the case at bar, the evidence of fraud was offered to prove Dr. Marne's character for untruthfulness. I find no error in permitting this line of questioning as the witness's character for untruthfulness was an essential factor in the jury's determination of the weight to afford his testimony.

## II. Article of Expert Witness Dr. Buckholz

■ The Mizells contend the trial court erred in excluding an article on RSD written by Glover's expert witness, Dr. John Buckholz, because it was his own prior statement and conflicted with his testimony. We disagree.

Dr. Buckholz is a podiatric physician and surgeon practicing in Michigan who was retained by Dr. Glover to review the records in this case. On cross-examination, the Mizells sought to introduce a chapter written by Dr. Buckholz that appeared in a podiatric textbook. The trial court ruled the document inadmissible, but allowed counsel to cross-examine Dr. Buckholz extensively about the chapter.

Rule 803(18), SCRE, provides that a published treatise on medicine established as a reliable authority does not constitute hearsay. The rule also states that, "if admitted, the statements may be read into evidence but may not be received as exhibits." [11] The Mizells concede that relevant portions of the chapter were read into evidence, but argue the jury was left to rely upon its "imperfect memory" of the contents of the chapter because the treatise itself was not admitted.

We find no prejudicial error. The trial court allowed the Mizells to cross-examine Dr. Buckholz extensively about the

---

9. *Id.* at 316.

10. *United States v. Bagaric,* 706 F.2d 42 (2nd Cir.1983), *abrogated on other grounds by National Organization for Women, Inc. v. Scheidler,* 510 U.S. 1215, 114 S.Ct. 1340, 127 L.Ed.2d 688 (1994).

11. Rule 803(18), SCRE.

article, and the substance of the matter was before the jury. Accordingly, the Mizells are not entitled to a new trial as they have exhibited no prejudice.

## III. Qualification of Dr. Martin as an Expert Witness

The Mizells contend the trial court erred in allowing Dr. Dennis Martin, a podiatrist retained by Dr. Glover, to testify concerning the treatment provided by the Pain Center and his interpretation of the treating physician's notes because he "was a podiatrist whose training and license ended at the ankle." The Mizells contend Dr. Martin is not an expert on RSD, and should not have been permitted to testify that Mizell failed to follow through with treatment.

To be qualified as an expert witness, "a witness must have acquired by reason of study or experience or both such knowledge and skill in a business, profession, or science that he is better qualified than the jury to form an opinion on the particular subject of his [or her] testimony." [12] The qualification of an expert witness and the admissibility of his or her testimony are matters left to the sound discretion of the trial court, whose decision will not be reversed on appeal absent an abuse of that discretion and prejudice to the opposing party.[13] An abuse of discretion occurs when there is an error of law or a factual conclusion that is without evidentiary support.[14]

Dr. Martin is a South Carolina podiatrist retained as an expert by Dr. Glover. He practices in Charleston, and his practice deals with the treatment of and surgery for foot and ankle pathology. He attended a four-year podiatry school,

---

12. *Walker v. The Bluffs Apartments*, 324 S.C. 350, 353, 477 S.E.2d 472, 473 (quoting *Botehlo v. Bycura*, 282 S.C. 578, 586, 320 S.E.2d 59, 64 (Ct.App.1984)). *See also* Rule 702, SCRE ("If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.").

13. *Penton v. J.F. Cleckley & Co.*, 326 S.C. 275, 486 S.E.2d 742 (1997). *See also McGee v. Bruce Hosp. Sys.*, 321 S.C. 340, 468 S.E.2d 633 (1996); *Creed v. City of Columbia*, 310 S.C. 342, 426 S.E.2d 785 (1993); *Walker*, 324 S.C. at 353, 477 S.E.2d at 473.

14. *Lee v. Suess*, 318 S.C. 283, 457 S.E.2d 344 (1995).

Pennsylvania College of Podiatric Medicine, and he served a three-year residency program in Georgia. He is certified by the American Board of Podiatric Surgery. Dr. Martin has published scholarly articles in journals and textbooks, and he is one of three editors of what he called the leading text on foot surgery by McGlamry, *The Comprehensive Textbook of Foot Surgery.* Dr. Martin also has hospital privileges at several hospitals in the Charleston area.

Dr. Martin first testified that Dr. Glover did not breach the standard of care for the podiatric profession. He then stated he reviewed the notes of other physicians, including those of the Pain Center. When questioned on direct examination about his understanding of what took place at the Pain Center, Dr. Martin stated:

> In reviewing and seeing the Clinic's notes, the initial diagnosis . . . was early RSD and I believe one of the first things they did was use a sympathetic block to see if she would get any relief from that sympathetic block. That to the pain management specialists gives them an idea whether this is a true sympathetic pain or whether there might be another cause for it. There was an immediate relief, but it was not a complete relief. There was a very confusing picture to the pain management doctors to the point where the next several visits concentrated more on the local problem in the foot, which was the site of the neuroma incision. . . .

The Mizells objected, stating Dr. Martin was not qualified to comment on what the Pain Clinic did and that there was no evidence "he knows anything about treating pain as an anesthesiologist." The trial court ruled Dr. Martin could review the notes and discuss his opinion based thereon.

We find no error in this ruling. Although the Mizells maintain Dr. Martin disparaged the Pain Center's method of treatment, the testimony was, for the most part, merely a recital of Mizell's initial treatment at the clinic rather than an opinion on the quality or scope of the clinic's treatment.

■ On appeal, the Mizells also assert that Dr. Martin should not have been allowed to discuss the treatment at the Pain Center, specifically finding error with his statement that "[t]here was a very confusing picture to the pain management doctors. . . ." They maintain he was not qualified as an expert

regarding the treatment the Pain Center provided based on his statement that he understood why sympathetic blocks are performed but he was not "an expert in that particular mode of treatment."

We conclude, however, that the trial court properly found this was an appropriate subject for Dr. Martin's testimony. As an expert in podiatry called to evaluate Dr. Glover's treatment, Dr. Martin necessarily was entitled to review the medical records of the patient to render his conclusions based thereon and to discuss the basis for those opinions.

■ To the extent the Mizells assert Dr. Martin improperly stated Mizell did not follow through with treatment, this allegation is without merit. To the contrary, Dr. Martin testified that Mizell did not go back for further procedures because the Mizells thought the risk of possible paralysis or injury from the recommended pain treatment on the spine was too great. In any event, the Mizells made no contemporaneous objection to this testimony,[15] and they fail to identify any other offending passages in their brief.

## IV. Qualification of Dr. Buckholz as an Expert Witness

■ The Mizells contend they are entitled to a new trial because Dr. Glover's expert witness, Dr. Buckholz, is from Michigan and was therefore not qualified as an expert testifying as to the scope of practice or standard of care for podiatrists in South Carolina.

Dr. Buckholz is a board certified podiatric physician and surgeon practicing in Michigan. He testified that he is familiar with the standard of care for treatment by a podiatrist and is familiar with the standard of care that would apply to a doctor treating the foot and ankle anywhere in the United States. He conceded he did not know the exact scope of practice for a podiatrist in South Carolina, which he defined as the level of treatment that a podiatrist can provide, such as whether it is below the knee or below the ankle.

■ In a medical malpractice action, the plaintiff generally must use expert testimony to establish both the required

---

15. *Taylor v. Medenica,* 324 S.C. 200, 479 S.E.2d 35 (1996) (a contemporaneous objection is required to preserve an issue for appellate review).

standard of care and the defendant's failure to conform to that standard.[16] The qualification of an expert witness and the admissibility of his or her testimony are matters left to the sound discretion of the trial court, whose decision will not be reversed on appeal absent an abuse of that discretion and prejudice to the opposing party.[17]

Our supreme court has held that the degree of care to be observed by a physician is that of an average, competent practitioner acting in the same or similar circumstances.[18] In *King v. Williams*,[19] the court rejected the locality rule and adopted a national standard of care for physicians and dentists in South Carolina.[20]

In *McMillan v. Durant*,[21] the court extended *King* "to include nursing professionals and other health care professionals." [22] The court noted that "the evolution of the law appears to support the adoption of a national standard of care throughout the health care system." [23] "Under a national standard, the appropriate comparative analysis must consider the physician by specialty, educational level, medical environment, and any factor which is relevant to sound medical practice." [24]

Dr. Buckholz testified that he was able to evaluate the standard of care of a podiatrist practicing anywhere in the

---

16. *Pederson v. Gould*, 288 S.C. 141, 341 S.E.2d 633 (1986); *Hickman v. Sexton Clinic, P.A.*, 295 S.C. 164, 367 S.E.2d 453 (Ct.App.1988).

17. *Penton*, 326 S.C. at 283, 486 S.E.2d at 746; *Lee*, 318 S.C. at 285, 457 S.E.2d at 345.

18. *Keaton v. Greenville Hosp. Sys.*, 334 S.C. 488, 514 S.E.2d 570 (1999); *King v. Williams*, 276 S.C. 478, 279 S.E.2d 618 (1981).

19. 276 S.C. 478, 279 S.E.2d 618 (1981).

20. *Id.* at 482, 279 S.E.2d at 620 (holding trial court did not err in allowing Florida physician to testify in malpractice case as to the negligence of a South Carolina physician).

21. 312 S.C. 200, 439 S.E.2d 829 (1993).

22. *Id.* at 207, 439 S.E.2d at 833.

23. *Id.* at 206, 439 S.E.2d at 832.

24. *Id.*

United States. The Mizells were free to cross-examine Dr. Buckholz as to the basis of any of his opinions and did so in depth.

Moreover, Dr. Buckholz testified a podiatrist's scope of practice deals with the level of treatment a podiatrist is licensed to provide. Unlike the standard of care, which is national and is based on what a competent physician would have done under like circumstances and conditions, the scope of practice is limited by the state.

That Dr. Buckholz was not familiar with the scope of practice in South Carolina is of no moment because there was no allegation Dr. Glover's treatment exceeded his scope of practice. Furthermore, any defects in the amount or quality of Dr. Buckholz's experience go to the weight of his testimony, not its admissibility.[25]

**AFFIRMED.**

CONNOR, J., concurs in part in a separate opinion.

HOWARD, J., concurs except as to Part I, in which he concurs with CONNOR, J.

CONNOR, Judge, (concurring):

█ I concur with the lead opinion except as to Part I, with which I concur in result only. Therefore, I address Part I separately.

At trial, the Mizells filed a motion in limine. They argued the court should prohibit examination of Dr. Marne about a previous lawsuit involving Dr. Marne. The sole argument in support of the motion was that the final judgment in the previous case did not address the issue of whether Dr. Marne had committed fraud.

The trial judge ruled Respondents could cross-examine Dr. Marne about the previous lawsuit and thereby attempt to impeach his credibility under Rule 608, SCRE. During the ensuing cross-examination, Respondents' attorney confronted

---

**25.** *Knoke v. South Carolina Dep't of Parks, Rec. & Tourism,* 324 S.C. 136, 478 S.E.2d 256 (1996); *Hawkins v. Greenwood Dev. Corp.,* 328 S.C. 585, 493 S.E.2d 875 (Ct.App.1997), *cert. denied,* (Oct. 9, 1998).

Dr. Marne with the jury interrogatory from the previous lawsuit.

The Mizells argue on appeal that the trial court erred by allowing the introduction of the jury interrogatory. However, their motion in limine merely sought to prevent mention of Dr. Marne's previous lawsuit. There was no objection when Respondents' counsel confronted Dr. Marne with the jury interrogatory. Specifically, the Mizells did not argue to the trial court that extrinsic evidence was inadmissible to prove Dr. Marne's untrustworthiness. *See* Rule 608(b), SCRE. Therefore, the issue was neither raised to nor ruled upon by the trial court, and whether the jury interrogatory was extrinsic evidence and therefore not permitted under Rule 608(b), SCRE, is not an issue that can be addressed by this court. *Wilder Corp. v. Wilke*, 330 S.C. 71, 497 S.E.2d 731 (1998).

Even if the jury interrogatory was extrinsic evidence and therefore inadmissible under Rule 608(b), SCRE, the error was harmless in light of Dr. Marne's prior testimony. When asked whether he had "deliberately and knowingly made material misrepresentation to an insurance company to obtain benefits under a policy of insurance," Dr. Marne responded, "That is correct." This admission was virtually identical to the jury interrogatory at issue.