553 S.E.2d 488

**Pamela C. NELSON and Doug Nelson, Appellants,**

v.

**John William TAYLOR, Respondent.**

**No. 3389.**

Court of Appeals of South Carolina.

Heard May 8, 2001.

Decided Sept. 17, 2001.

212

James W. Segura, of Varner & Segura, of Greenville, for appellants.

Robert D. Moseley, Jr., of Leatherwood, Walker, Todd & Mann, of Greenville, for respondent.

CONNOR, J.:

Pamela Nelson and her husband, Doug Nelson, brought this negligence action against John William Taylor[1] for personal injuries resulting from an automobile collision. At trial, Taylor admitted liability and the jury awarded $5,000 in actual damages to Pamela Nelson (Nelson) and $0 in actual damages to her husband.[2] On appeal, Nelson challenges the admission of the physical therapist's testimony concerning causation, and the trial judge's denial of her motions for a new trial *nisi additur*, or in the alternative, a new trial. We reverse and remand.

## FACTS

On November 8, 1995, Pamela Nelson was stopped at a red light when a vehicle driven by John William Taylor collided with the rear-end of Nelson's vehicle. Nelson's vehicle was damaged and she complained of pain in her back, neck, head, and shoulder. Nelson was subsequently treated by her family physician, an orthopedic surgeon, a neurosurgeon, a shoulder specialist, a chiropractor, and a physical therapist.

As a result of her treatment, distinct and contradicting theories emerged regarding the cause of Nelson's injuries.

---

1. The Nelsons also brought this action against Russell Taylor, the owner of the vehicle. Prior to trial, Russell Taylor was dismissed from the case.

2. In light of the specific issues raised by this appeal, it does not appear that Nelson's husband has appealed from this verdict.

Dr. Posta, a shoulder specialist, determined to a reasonable degree of medical certainty that Nelson's injuries were caused by the accident. In contrast, Nelson's physical therapist, Roger Bachour, concluded that Nelson's injuries stemmed from her use of the mouse at her computer workstation, resulting in rotator cuff tendinitis. Dr. Posta, however, conclusively ruled out rotator cuff tendinitis after reviewing the results of Nelson's MRI. On the other hand, Dr. Reid, an orthopedic surgeon, stated in his deposition that he did not find any evidence of shoulder impingement. He further found there was no objective evidence of a neurological problem.

Nelson's total medical expenses exceeded $9,900.00. Furthermore, her projected future medical expenses to alleviate the pain and impairment from her injuries totaled $3,500.00 in surgical fees and $5,800.00 in hospital fees. Nelson also sought recovery for pain and suffering, lost wages, and actual damages. Notwithstanding, the jury only awarded Nelson $5,000.00 in actual damages. Nelson moved for a new trial *nisi additur,* and alternatively, for a new trial. The trial judge denied both motions. Nelson appeals.

## DISCUSSION

### I.

Nelson argues the trial judge abused his discretion in admitting deposition testimony from the physical therapist concerning the medical cause of her injuries.

During his deposition, Bachour was qualified as an expert in the field of physical therapy. Over the objection of Nelson's counsel, Bachour opined, "[Nelson] appeared to have a[sic] rotator cuff tendinitis in the right shoulder due to the way she had her mouse set up at work and the way she was using that every day ——the way, ergonomically, her work station was set up." Bachour testified this assessment was based on what Nelson had told him and his clinical examination.

On cross-examination, Bachour admitted he was not a medical doctor, he does not make medical diagnoses, and he only has training in physical therapy. He acknowledged that his assessment should not be used to establish medical treatment. He further stated he had not examined any of the diagnostic

tests that had been performed on Nelson or the records of Nelson's treating physicians.

Prior to the introduction of Bachour's deposition testimony at trial, Nelson's counsel objected to Bachour's opinion concerning causation. He characterized Bachour's diagnosis of Nelson's injuries as unreliable and irrelevant. Specifically, counsel argued Bachour impermissibly made a diagnosis given he: (1) is a physical therapist and not a medical doctor; and (2) had not reviewed Nelson's medical records or diagnostic test results. The trial judge ruled the deposition testimony was admissible and he would allow the physical therapist to "testify as to what [the physical therapist] was treating her for." The judge stated Nelson's counsel could point out to the jury that Bachour is not a medical doctor.

"To be competent to testify as an expert, 'a witness must have acquired by reason of study or experience or both such knowledge and skill in a profession or science that he is better qualified than the jury to form an opinion on the particular subject of his testimony.' " *Gooding v. St. Francis Xavier Hosp.*, 326 S.C. 248, 252–53, 487 S.E.2d 596, 598 (1997) (quoting *O'Tuel v. Villani*, 318 S.C. 24, 28, 455 S.E.2d 698, 701 (Ct.App.1995)); Rule 702, SCRE ("If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise."). Qualification depends on the particular witness' reference to the subject. *Gooding*, 326 S.C. at 253, 487 S.E.2d at 598.

The qualification of a witness as an expert and the admissibility of his or her testimony are matters left to the sound discretion of the trial judge, whose decision will not be reversed on appeal absent an abuse of that discretion and prejudice to the opposing party. *Payton v. Kearse*, 329 S.C. 51, 60–61, 495 S.E.2d 205, 211 (1998); *Mizell v. Glover*, 339 S.C. 567, 577, 529 S.E.2d 301, 306 (Ct.App.2000). An abuse of discretion occurs when there is an error of law or a factual conclusion that is without evidentiary support. *Lee v. Suess*, 318 S.C. 283, 457 S.E.2d 344 (1995).

Our courts have found in limited circumstances that witnesses other than medical doctors may testify as medical experts. However, in these cases the witnesses have had some expertise in the matter in dispute. *See, e.g., Daniels v. Bernard,* 270 S.C. 51, 240 S.E.2d 518 (1978) (in a personal injury action, chiropractor was competent to testify as a medical expert to the extent of his knowledge and experience); *Howle v. PYA/Monarch, Inc.,* 288 S.C. 586, 344 S.E.2d 157 (Ct.App.1986) (psychologist permitted to give expert opinion concerning diagnosis, prognosis, and causation of plaintiff's mental and emotional condition).

The parameters for a physical therapist's expert testimony have not been outlined. We are, however, guided by the General Assembly's statutory scheme created to define and regulate the practice of physical therapy. S.C.Code Ann. §§ 40–45–5 to –330 (2001); *see Bolton v. CNA Ins. Co.,* 821 S.W.2d 932 (Tenn.1991) (reviewing the Tennessee "Occupational and Physical Therapy Practice Act" to determine that a physical therapist is not qualified to form and express an expert medical opinion as to the permanent impairment or permanent physical restrictions of an injured person in a workers' compensation case).

Although not intended to be an all-inclusive survey of these statutes, we point to several key provisions which define the practice and regulation of physical therapists. A review of these statutes reveals the General Assembly purposefully confined the scope of physical therapy.[3] Pursuant to these provisions, a physical therapist is limited in terms of methods of treatment. Equally important, a physical therapist is not authorized to practice medicine, prescribe medications, or order medical/laboratory tests. S.C.Code Ann. §§ 40–45–20(9), 40–45–310 (2001).[4] Even though the General Assembly

---

**3.** In an amendment which became effective on June 8, 1998, the General Assembly revised the statutory provisions relating to the licensing and regulation of physical therapists. Act No. 360, 1998 S.C. Acts 2103.

**4.** S.C.Code Ann. § 40–45–20(9) (2001) provides:

(9) "The practice of physical therapy" means the evaluation and treatment of human beings to detect, assess, prevent, correct, alleviate, and limit physical disability, bodily malfunction, and pain from injury, disease, and any other bodily or mental condition and includes

has eliminated the requirement for treatment by prescription from a physician or dentist, a physical therapist is still restricted in terms of the extent to which a patient may be treated without the referral of a licensed physician. S.C.Code Ann. § 40–45–110(A)(2), (4), (5) (2001).[5]

 In light of these statutory restrictions, we agree with Nelson that Bachour was not qualified to testify regarding

the administration, interpretation, documentation, and evaluation of physical therapy tests and measurements of bodily functions and structures; the establishment, administration, evaluation, and modification of a physical therapy treatment plan which includes the use of physical, chemical, or mechanical agents, activities, instruction, and devices for prevention and therapeutic purposes; and the provision of consultation and educational and other advisory services for the purpose of preventing or reducing the incidence and severity of physical disability, bodily malfunction, and pain. The use of roentgen rays and radium for diagnostic or therapeutic purposes and the use of electricity for surgical purposes, including cauterization and colonic irrigations, are not authorized under the term "physical therapy" as used in this chapter, and nothing in this chapter shall be construed to authorize a physical therapist to prescribe medications or order laboratory or other medical tests.

S.C.Code Ann. § 40–45–310 (2001) states in pertinent part:

Nothing in this chapter may be construed as authorizing a licensed physical therapist or any other person to practice medicine, surgery, osteopathy, homeopathy, chiropractic, naturopathy, magnetic healing, or any other form, branch, or method of healing as authorized by the laws of this State.

5. S.C.Code Ann. § 40–45–110(A)(2), (4), (5) (2001) provide:

(A) In addition to other grounds provided for in Section 40–1–110, the board, after notice and hearing, may restrict or refuse to grant a license to an applicant and may refuse to renew the license of a licensed person, and may suspend, revoke, or otherwise restrict the license of a licensed person who:

(2) has treated or undertaken to treat human ailments otherwise than by physical therapy or has practiced physical therapy and failed to refer to a licensed medical doctor or dentist any patient whose medical condition should have been determined at the time of evaluation or treatment to be beyond the scope of practice of a physical therapist;

(4) in the absence of a referral from a licensed medical doctor or dentist, provides physical therapy services beyond thirty days after the initial evaluation and/or treatment date without the referral of the patient to a licensed medical doctor or dentist;

(5) changes, or in any way modifies, any specific patient care instructions or protocols established by an appropriate health care provider without prior consultation with and approval by the appropriate health care provider.

causation. Bachour's training and experience qualified him to testify as an expert in the limited area of the physical therapy required to treat Nelson's injuries. Significantly, Bachour admitted he did not make medical diagnoses. Moreover, Bachour did not independently treat Nelson. Instead, Nelson was referred by three different physicians to whom Bachour reported his findings. Therefore, the trial judge abused his discretion in admitting Bachour's deposition testimony which exceeded the scope of his expertise. *See State v. Ellis*, 345 S.C. 175, 547 S.E.2d 490 (2001) (holding police officer, who was qualified as an expert in crime scene processing and fingerprint identification, exceeded the scope of his expertise when he was permitted to give his opinion involving crime scene reconstruction which went to the ultimate issue of whether defendant acted in self-defense when he shot and killed the victim).

Additionally, we find our decision is consistent with several jurisdictions which have addressed a similar issue. *See, e.g., Stutzman v. CRST, Inc.*, 997 F.2d 291 (7th Cir.1993) (holding trial court properly prohibited physical therapist from rendering medical prognosis for which she was not qualified); *Stevens v. Brown*, 249 A.D.2d 909, 672 N.Y.S.2d 194 (N.Y.App. Div.1998) (ruling trial court properly allowed physical therapist and occupational therapist to testify in personal injury case where the court limited their testimony and refused to allow them to testify as experts); *Zinn v. Leach*, Nos. 90–CA–03, 90–CA–08, 1990 WL 187466 (Ohio Ct.App. Nov. 29, 1990) (finding trial judge erred in permitting physical therapist to give an opinion as to medical causation in violation of statutory prohibition; however, error was harmless where evidence was cumulative to other credible evidence reaching the same conclusion); *Girkin v. Angel*, No. 76–42, 260 Ark. N-26, 1976 WL 119 (June 21, 1976) (holding physical therapist not permitted to testify on causation and diagnosis of plaintiff's injuries where therapist never contended that he was qualified to diagnose the injury and his treatments were based on physician's orders); *see also Elmore v. Travelers Ins. Co.*, 824 S.W.2d 541 (Tenn.1992) (finding in worker's compensation case, physical therapist was not qualified to give expert opinion on medical causation); *but see Ehlers v. Amon*, No. C0–95–1914, 1996 WL 250530 (Minn.Ct.App. May 14, 1996) (find-

ing no error to allow physical therapist to testify regarding causation where there was evidence he possessed the requisite qualifications and his opinion did not substantially influence the jury's verdict given that plaintiff's treating physician and chiropractor rendered similar opinions).

Taylor contends that even if the admission of Bachour's deposition testimony constituted error, it does not require a new trial. He asserts any improper testimony was cumulative to the testimony of Dr. Posta, the shoulder specialist who treated Nelson. We find Taylor's argument unpersuasive for several reasons. Because liability was admitted, the crucial issue was whether Nelson's injuries were proximately caused by the accident. Thus, any conflict in the evidence created by Bachour's testimony was a significant factor in the case. Moreover, Bachour's testimony was not cumulative to Dr. Posta's final diagnosis and opinion regarding causation. Although Dr. Posta initially diagnosed Nelson as having mild rotator cuff tendinitis, he ultimately opined that Nelson had a shoulder impingement which, to a reasonable degree of medical certainty, was caused by the accident. Accordingly, we reverse and remand for a new trial.

Because we find the trial judge erred in permitting Bachour to testify beyond the scope of his expertise, we need not address Nelson's remaining arguments concerning the admission of this deposition testimony.[6]

## II.

Nelson further argues the trial judge erred in failing to grant a new trial *nisi additur,* or in the alternative, a new trial, because of the inadequate amount of the damages awarded. In light of our decision, we need not address this issue. *See Futch v. McAllister Towing of Georgetown, Inc.,* 335 S.C. 598, 518 S.E.2d 591 (1999) (noting that an appellate court need not address appellant's remaining issues when its determination of a prior issue is dispositive); *Whiteside v. Cherokee County Sch. Dist. No. One,* 311 S.C. 335, 428 S.E.2d 886 (1993)

---

6. Nelson additionally argued: (1) the trial judge failed to properly determine the reliability of the evidence; and (2) Bachour's testimony was inadmissible because he did not testify that, taking into consideration all the data, Nelson's injuries "most probably" came from the accident.

(noting appellate court need not address remaining issues when determination of prior issue is dispositive).

Based upon the foregoing, the decision of the trial judge is **REVERSED AND REMANDED.**

HEARN, C.J. concurs.

GOOLSBY, J. dissents in separate opinion.

GOOLSBY, J. (dissenting):

I respectfully dissent. I would hold the trial court did not err in admitting the testimony from the physical therapist about the cause of Nelson's rotator cuff tendinitis.

The question of the therapist's qualifications to give expert testimony in this instance was one addressed to the sound discretion of the trial court.[7] Just as an emergency room technician who had intubated more than 100 patients and who taught physicians on intubation procedures was qualified to testify as an expert witness in a medical malpractice action in which the patient claimed that an anesthesiologist's negligence in performing intubation had fractured the patient's two front teeth, I should think that a certified physical therapist who held an undergraduate degree and a three-year degree from a medical university and whose expertise as a physical therapist was conceded by the other party should be qualified to testify as an expert witness in a wreck case in which the patient claimed that an automobile accident caused a certain physical injury.[8]

I see nothing in the statutory law cited by the majority that would proscribe the admission of Bachour's statement that

_____

**7.** *Gooding v. St. Francis Xavier Hosp.*, 326 S.C. 248, 487 S.E.2d 596 (1997).

**8.** *See Gooding,* 326 S.C. at 252–53, 487 S.E.2d at 598 ("To be competent to testify as an expert, 'a witness must have acquired by reason of study or experience or both such knowledge and skill in a profession or science that he is better qualified than the jury to form an opinion on the particular subject of his testimony.' ") (quoting *O'Tuel v. Villani,* 318 S.C. 24, 28, 455 S.E.2d 698, 701 (Ct.App.1995)); 31A Am.Jur.2d *Expert and Opinion Evidence* § 55, at 61 (1989) ("Simply stated, in order to qualify as an expert, a witness must possess special knowledge of some subject on which the jury's knowledge would presumably be inadequate without expert assistance.").

Nelson's rotator cuff tendinitis resulted from the setup of her work station. There was nothing in the record that would even remotely suggest that Bachour's treatment of Nelson was inconsistent with the advice of any of her treating physicians. Moreover, as the majority acknowledges, the legislature no longer requires a patient to obtain a prescription from a physician before receiving treatment from a physical therapist.[9]

Bachour first treated Nelson on November 20, 1995, shortly after the accident. At that time, Nelson's primary complaints concerned pain in her cervical spine and pain towards her right shoulder. From the record, it appears Nelson was discharged from Bachour's care the following month, and it was noted she had shown good progress in physical therapy and had intended to return to work the following week. In April 1996, Nelson again sought treatment from Bachour, this time complaining mainly of right shoulder pain that occasionally radiated to her right upper extremity. It is the assessment Bachour made in his notes on April 1, 1996, several months after Nelson had initially been discharged from his care, that Nelson argues should not have been admitted at trial.

As Nelson's attorney aptly pointed out when questioning Bachour, there was no mention in the subjective portion of Bachour's notes that Nelson said anything about a mouse or a computer station; however, the notes Bachour made in April 1996, made no reference to Nelson's automobile accident either. Moreover, Bachour testified that he routinely questioned his patients about what activities gave them pain and that his assessment was based on what Nelson had told him. Given these circumstances, I would hold Bachour's deposition testimony about what his notes reflected regarding the origin of Nelson's later complaints did not exceed the domain of his expertise as a physical therapist.

9. S.C.Code Ann. § 40–45–20(9) (2001). In my view, this case is easily distinguishable for this very reason from *Bolton v. CNA Insurance Company*, 821 S.W.2d 932 (Tenn.1991), which the majority cites as persuasive authority. In *Bolton*, the Supreme Court of Tennessee emphasized that, under the applicable statute, "a physical therapist is allowed to evaluate and treat an injury using only specific agents, properties and methods, but she/he may do so only by referral of a licensed doctor of medicine, osteopathy or podiatry, except for the initial evaluation." *Id.* at 936.

Furthermore, Bachour's determination of the reason for Nelson's later complaints was more in the nature of a clinical, as opposed to a medical, diagnosis.[10] There was no attempt to refute Bachour's statement that, although he did not give medical diagnoses, he had training in clinical diagnosis, which, as described by none other than Nelson's attorney, entailed "making a clinical diagnosis based upon what they tell you, what the diagnostic tests tell you and based upon your observation on them."[11] With due respect to the majority, then, I attach no significance to Bachour's admission that he did not make medical diagnoses.

I would further hold Nelson's argument concerning the denial of the motion for a new trial nisi additur is manifestly without merit.[12]

10. *See Black's Law Dictionary* 464 (7th ed. 1999) (defining "clinical diagnosis" as "[a] diagnosis from a study of symptoms only").

11. Although, as the majority notes, Bachour did not examine any of the diagnostic tests that had been performed on Nelson, I would hold this deficiency went to the weight, rather than to the admissibility, of his testimony.

12. *See McCourt v. Abernathy*, 318 S.C. 301, 308, 457 S.E.2d 603, 607 (1995) ("The trial judge alone has the power to grant a new trial *nisi* when he finds the amount of the verdict to be merely inadequate or excessive and the denial of such a motion will not be reversed on appeal absent an abuse in the trial judge's discretion.").