486 S.E.2d 742

**Tracy Lynn PENTON, Respondent,**

v.

**J.F. CLECKLEY & COMPANY and South Carolina Department of Transportation, Defendants,**

**of whom J.F. Cleckley & Company is Respondent,**

and

**South Carolina Department of Transportation is Appellant.**

No. 24638.

Supreme Court of South Carolina.

Heard Nov. 19, 1996.

Decided June 23, 1997.

---

Marvin C. Jones, Christy S. Stephens, and Elbert O. Duffie, III, of Bogoslow & Jones, Walterboro, for appellant.

J. Kevin Holmes and Malcolm M. Crosland, of Steinberg Law Firm, Charleston, for respondent Tracy Lynn Penton.

Thomas H. Hesse and Sean K. Trundy, of Wise, Pratt–Thomas, Pearce, Epting & Walker, P.A., Charleston, for respondent J.F. Cleckley & Company.

WALLER, Justice:

Respondent Tracy Lynn Penton sued Respondent J.F. Cleckley & Co. ("Cleckley") and Appellant South Carolina Department of Transportation ("Department") for injuries she

received when her car ran off Highway 17-A in Colleton County and overturned. Department is appealing the jury's verdict finding it solely liable in the amount of $200,000 and the trial judge's finding it was not protected by an indemnity bond taken out by Cleckley.

## FACTS

On the afternoon of July 15, 1990, Penton was travelling south on Highway 17-A, a two-lane road with a speed limit of 55 miles per hour. As she was passing a car ahead of her, she felt a sudden jerk on the left side of her car (she was in the left lane) and her car left the pavement. When she pulled her car back onto the pavement, the car started fishtailing and she lost control. The car went off the left side of the road and flipped down an embankment. Penton was thrown from the car and broke her back.

The section of road on which the accident occurred had been recently re-paved by Cleckley, a resurfacing contractor hired by Department. Penton alleged Cleckley failed to perform the resurfacing contract according to its provisions; created a dangerous three- to four-inch dropoff on the road's shoulder; failed to build up the road's shoulder to correct the dropoff; and failed to warn drivers by placing signs or barriers near the dropoff. She alleged Department failed to warn drivers by placing signs or barriers near the dropoff and failed to correct the dropoff by building up the shoulder of the road.

Both Cleckley and Department counterclaimed alleging contributory negligence. Department also cross-claimed against Cleckley, alleging the indemnity bond Cleckley was required to get insulated it from liability and that Cleckley was solely at fault. Cleckley and Department agreed that the trial judge would rule on the indemnity bond issue after the jury reached a verdict regarding who was liable. After the jury found Department solely liable, the trial judge found it was not protected by the indemnity bond.

## ISSUES

I.   Did the trial court err in admitting testimony regarding allocation of responsibilities under the resurfacing contract?

II.  Did the trial court err in finding Cleckley did not have a
     duty to indemnify Department?

## DISCUSSION

### I.  Admission of Testimony

Department argues the trial judge improperly allowed testimony of its employees regarding their understanding of the parties' responsibilities under the resurfacing contract.  We disagree.

■  As noted above, Penton sued Department alleging it had not corrected a dangerous low shoulder or dropoff created when Cleckley re-paved the road, and that it had failed to place appropriate signs warning about the condition.  Department's position was that pursuant to the resurfacing contract, Cleckley assumed these responsibilities.  Thus the contract's interpretation, which was introduced into the record [1], became very important in this case.

---

1.  Special provision number 28 addressed Cleckley's responsibility for shoulders:

Dressing of Shoulders: The Contractor shall perform any necessary work that is required in order that the shoulders of the roadway are left in a near [sic] and presentable condition.  This work shall include any blading work necessary to replace or remove any disturbed material adjacent to the pavement edge in order to eliminate any dropoff.  No direct payment shall be made for this work, but the costs shall be included in the price of other items.

Specification 107.11 addressed Cleckley's responsibility for signs:

**Barricades, Warning Signs, Detour Signs and Traffic Control Devices.**
The Contractor, without extra compensation ... shall provide, erect and maintain in good condition all necessary barricades, suitable and sufficient lights, danger signals, signs and other traffic control devices; shall provide qualified flagmen where necessary to direct the traffic; and shall take all necessary precautions for the protection of the work, the warning that the road is under construction, and the safety of the public....  Suitable warning signs shall be provided to properly control and direct traffic....  The Contractor shall erect warning signs in advance of any place on the project where operations may interfere with the use of the road by traffic, and at all intermediate points where the new work crosses or coincides with existing roads which are open to traffic.

The Department will erect and maintain signs on detours or temporary routes that the Contractor is not required to maintain, but the Contractor shall provide and maintain such signs at and along all detours for which he is responsible.  The Contractor shall maintain and relocate, where necessary, all regulatory, warning and guide signs in

At trial, four witnesses testified regarding their understanding of these contractual provisions, three of which were employees of Department. All testified that under Special Provision 28, the contractor had to remove dirt pushed up against the edge of the road so that there would be a clean area to resurface. After re-paving is completed, the contractor must then bring the dirt that was removed back up to the edge of the road. Once done, it is Department's responsibility to bring in any additional dirt to bring the road's shoulder back up to the level of the pavement. They also testified Department was responsible for putting up low shoulder signs. This was because when additional material is needed to build up shoulders, the Department cannot go in immediately and do it during the summer because the new asphalt has to "cure." Therefore, Department solves the safety problem of the lag time (when there would be a low shoulder) by placing low shoulder signs.

Department argues the testimony regarding who was responsible for placing low shoulder signs was inadmissible because it varied the terms of the written contract between it and Cleckley.[2] We disagree. Under the parol evidence rule, extrinsic evidence is inadmissible to vary or contradict the terms of an integrated agreement. *See e.g., Levy v. Outdoor Resorts,* 304 S.C. 427, 405 S.E.2d 387 (1991). However, where a contract is ambiguous, parol evidence is admissible to ascertain the true meaning and intent of the parties. *Klutts Resort Realty, Inc. v. Down'Round Devp. Corp.,* 268 S.C. 80, 232 S.E.2d 20 (1977); *Skinner v. Elrod,* 308 S.C. 239, 417 S.E.2d 599 (Ct. App.1992). An ambiguous contract is one capable of being understood in more ways than just one or one unclear in meaning because it expresses its purpose in an indefinite manner. *Klutts Resort Realty, Inc., supra.* See also *Car-*

---

place of those that may be erected by the Department, within the limits of his contract.

2. At oral argument, Department conceded it had the responsibility to decide, after the repaving contractor had moved back material it originally disturbed, where low shoulders existed and to then build them back up to acceptable standards as determined by Department. Therefore, we do not consider whether the testimony on this issue violated the parol evidence rule.

*olina Ceramics, Inc. v. Carolina Pipeline Co.*, 251 S.C. 151, 161 S.E.2d 179 (1968) (contract is ambiguous if obscure in meaning or has double meaning); *U.S. Leasing Corp. v. Janicare, Inc.*, 294 S.C. 312, 364 S.E.2d 202 (Ct.App.1988) (where contract is silent as to particular matter and because of nature and character of transaction ambiguity arises, parol evidence admissible to supply the language's deficiency and establish true intent and meaning so long as the evidence is not contradictory).

■■■■ We find the language in Specification 107.11 is ambiguous. Reading the section as a whole, it is unclear exactly what type of signs are required to be put up by the contractor; the first phrase could be read to only require signs used to control traffic. Whether a low shoulder warning sign is a traffic control sign is not addressed, nor is "traffic control device" defined. It is clear that the contractor is not required to provide every sign used during construction. More importantly, this section is unclear about whether the contractor's responsibility only extends to putting up signs when it is actually performing road construction. The evidence in the record shows Cleckley had completed its re-paving and had moved on to another road long before Penton's accident. Furthermore, as mentioned above, Department conceded it had the responsibility to determine where the shoulders needed to be built up. In other words, Department resumed control of any further construction at that point (at least in regard to building up the shoulders). The record also shows that nowhere are there any set guidelines for what constitutes a low shoulder. The inherent conflict in all of this evidence is apparent: how can a contractor know where to place low shoulder signs if it does not have the responsibility of determining where low shoulders exist? [3] Because there is simply no way of knowing, by merely reading this contract, what Cleckley was supposed to do after it finished re-paving the

---

**3.** The fact that Cleckley had not received "final acceptance" of its work at the time of the accident does not resolve this issue. No one contests that until such acceptance was received (which occurred after Penton's accident), Cleckley still had to perform its contractual obligations. The primary issue in this case, however, is exactly what these obligations were.

road, we find the testimony was properly admitted to explain it.[4]

## II. Indemnity Agreement

■ The resurfacing contract required Cleckley to indemnify Department "from all suits or claims of any character brought because of any injuries or damage received or sustained by any person, persons, or property on account of . . . any act or omission, neglect, or misconduct of said contractor." In accordance with this requirement, Cleckley executed a performance and indemnity bond in the amount of $658,622.40. The parties agreed to wait until the jury had decided liability before dealing with this issue as part of the post-trial motions. After the jury found Department was solely liable for Penton's injuries, the trial judge held Cleckley did not have a duty to indemnify. Department argues this was error. We disagree.

Department argues Cleckley should have to indemnify because (1) section 15–78–60(15) of the South Carolina Tort Claims Act limits its liability and (2) Cleckley contractually

---

4. We reject Department's argument that the best evidence rule was violated in this case. This rule provides that when the contents of a writing are sought to be proved, the original document must be produced unless some reason can be shown for its unavailability. *See* 29A Am.Jur.2d *Evidence* § 1049 (1994). The best evidence rule has no application here because the contract was introduced into evidence. Furthermore, this objectionable testimony was not introduced to state what the contract terms were but to show how the parties interpreted them.

Additionally, Respondents argue Department waived this argument because it did not object to some of this testimony. Respondents also argue the testimony was admissible regardless of the parole evidence rule because it was given by Department's employees and therefore qualified as admissions by a party. We decline to decide this issue on these bases. The parole evidence rule is a rule not of evidence but of substantive law. Therefore, admission of evidence violating this rule is legally incompetent and should not be considered even if no objection to it was made at trial. See *Muckelvaney v. Liberty Life Ins. Co.*, 261 S.C. 63, 198 S.E.2d 278 (1973); *Adams v. Marchbanks*, 253 S.C. 280, 170 S.E.2d 214 (1969); 29A Am.Jur.2d *Evidence* § 1098 (1994); 32A C.J.S. *Evidence* § 851 (1964) (parol evidence rule considered rule of substantive law "because the law requires the terms of the agreement to be found in the writing itself and not because of any reasons which ordinarily require the exclusion of evidence, such as some policy against its admission, or its untrustworthiness or lack of probative value").

assumed the duties it was found to have breached. We reject both arguments. First, S.C.Code Ann. § 15–78–60(15) (Supp. 1995) provides the governmental entity is not liable for loss when it is protected by an indemnity bond. This is certainly not dispositive since the entire issue here is whether Department is *protected* by this bond. Second, under the contract terms Department may only seek indemnification when a claim is made for injury "on account of ... any act or omission, neglect, or misconduct" of Cleckley. Penton sued both parties and the jury clearly found no fault on the part of Cleckley. We find this jury verdict dispositive of the indemnification issue. Therefore, the judge's ruling was proper.

Finally, we affirm the remaining issues pursuant to Rule 220(b)(1), SCACR, and the following authorities: *Issue III: Foggie v. CSX Transp.*, 313 S.C. 98, 431 S.E.2d 587 (1993) (motion to amend and ruling on prejudice addressed to the sound discretion of the trial judge). *Issue IV: Lee v. Suess*, 318 S.C. 283, 457 S.E.2d 344 (1995) (qualification and admission of expert testimony are within the sound discretion of the trial judge and will not be overruled absent a finding of an abuse of discretion and prejudice to the complaining party).

For the foregoing reasons, the jury's verdict and the trial judge's ruling in this case are hereby

AFFRIMED

FINNEY, C.J., and MOORE and BURNETT, JJ., concur.

TOAL, J., concurs in result.