THIS
OPINION HAS NO PRECEDENTIAL VALUE. 
IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT
AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
Alvin Herbert Shuman,       
Respondent/Appellant,
 
 
 

v.

 
 
 
Charleston Lincoln Mercury, Inc. & Haywood B. Hyman, Sr.,       
Appellants/Respondents.
 
 
 

Appeal From Charleston County
Thomas L. Hughston, Jr., Circuit Court 
 Judge

Unpublished Opinion No. 2004-UP-001
Heard December 10, 2003  Filed January 
 6, 2004
Withdrawn, Substituted and Re-Filed 
 February 19, 2004

AFFIRMED IN PART, REVERSED IN PART, 
 AND REMANDED

 
 
 
G. Dana Sinkler, of Charleston, and W. Reilly Marchant, 
 of Richmond, for Appellants-Respondents.
Helen Tyler McFadden and W.E. Jenkinson, III, both of Kingstree, 
 for Respondent-Appellant.
 
 
 

PER CURIAM:  This cross-appeal involves 
 a contract dispute and a claim for unpaid wages arising out of Alvin Shumans 
 (Shuman) employment with a car dealership.  A jury returned a verdict in favor 
 of Shuman against Charleston Lincoln Mercury (CLM) and Heyward B. Hyman, Sr. 
 [1] for $175,000 for breach of contract and $65,000 for unpaid wages.  
 The trial court reduced the breach of contract verdict by $65,000, doubled the 
 amount of unpaid wages pursuant to the South Carolina Payment of Wages Act, 
 and awarded Shuman $75,000 in attorneys fees.  CLM and Shuman appeal.  We affirm 
 in part, reverse in part, and remand.
FACTS
Shuman was employed as general manager of CLM.  
 In addition to a set salary, Shuman received incentives or bonuses based on 
 the dealerships net profit.  In 1998, CLM began attempts to sell the dealership.  
 On July 30, 1998, Shuman received an employment agreement from CLM which provided 
 that, in exchange for Shuman using his best efforts to aid in the sale of the 
 dealership and continuing to serve as general manager, he would receive a $240,000 
 lump sum severance payment at the time of the closing of the sale of the dealership.  
 The agreement stated the purpose of the payment was to secure Shumans cooperation 
 in selling the dealership despite the fact that the sale could result in his 
 loss of employment.  The agreement was signed by John Conway, CLMs vice-president.  

In January 1999, CLM began negotiations with Sonic 
 Automotive, Inc. for the sale of the CLM dealership.  Because of the pending 
 sale of CLM, Shuman sought employment with a car dealership in Pennsylvania.  
 On January 9, 1999, Shuman entered into a second employment agreement with 
 CLM providing Shuman with a six-month term of employment, renewable unless written 
 notice of termination was given by either party sixty days prior to the expiration 
 of a term.  The 1999 agreement referenced the terms of the prior agreements 
 between the parties.  The 1999 agreement further provided that Shuman would 
 make himself available on CLMs premises a minimum of seven days per month and 
 would be available for telephone consultations with the owner and managers of 
 CLM as necessary.  Shuman continued working at CLM as well as with the dealership 
 in Pennsylvania.  
By letter of July 2, 1999, CLM terminated Shumans 
 employment.  On August 17, 1999 an agreement to sell the CLM dealership to Sonic 
 was finalized.  CLM did not provide Shuman with sixty days written notice of 
 its intent to terminate his employment and did not provide him with a severance 
 payment.  
Shuman filed this action against CLM alleging damages 
 for breach of contract and failure to pay wages.  In separate verdict forms, 
 the jury returned a verdict in favor of Shuman against CLM in the amount of 
 $175,000 for the breach of contract claim and $65,000 for the failure to pay 
 wages claim.  The trial court determined that the $65,000 the jury awarded for 
 unpaid wages was included in the breach of contract award and reduced the verdict 
 by $65,000.  The trial court doubled the award for unpaid wages pursuant to 
 S.C. Code Ann. § 41-10-80(C) (Supp. 2002) and awarded $75,000 in attorneys 
 fees and costs.  
LAW/ANALYSIS
1.  CLM argues the trial court erred in submitting 
 Shumans $240,000 severance pay claim to the jury because the severance pay 
 agreement was contingent on Shumans inability to obtain a comparable position 
 with the buyer of the CLM dealership.  Specifically, CLM asserts that because 
 Shuman accepted employment elsewhere prior to the closing of the sale of the 
 CLM dealership he was not entitled to the severance payment.  We find no error.
A condition precedent is any fact . . 
 . which, unless excused, must exist or occur before a duty of immediate performance 
 by the promisor can arise.  Ballenger Corp. v. City of Columbia, 286 
 S.C. 1, 5, 331 S.E.2d 365, 368 (Ct. App. 1985).  Whether a stipulation in a 
 contract constitutes a condition precedent is a question of construction dependent 
 on the intent of the parties to be gathered from the language they employ.  
 Id.  In the current appeal, there was conflicting testimony from the 
 parties as to whether Shuman was entitled to a severance payment.  The employment 
 agreement regarding the $240,000 severance payment made no reference to the 
 payment being conditioned on Shumans failure to obtain employment with the 
 purchaser of the dealership.  Accordingly, the evidence created a jury question 
 as to whether Shuman was entitled to severance pay and whether the pay was contingent 
 on his inability to obtain comparable employment with the purchaser of the CLM 
 dealership.  See Fleming v. Borden, Inc., 316 S.C. 452, 457, 450 
 S.E.2d 589, 592 (1994) (In passing on motions for directed verdict, the trial 
 court must view the evidence and all inferences which may reasonably be drawn 
 therefrom in the light most favorable to the non-moving party.  If more than 
 one reasonable inference can be drawn from the evidence, the case must be submitted 
 to the jury.).
2.  CLM asserts the trial court erred in allowing 
 Shuman to testify about the meaning of the term net profit because such testimony 
 violated the parol evidence rule.  We disagree.
Shumans original employment agreement 
 with CLM in 1997 provided that he would receive a certain percentage of the 
 dealerships net profits.  Shuman also alleged that under the terms of the payroll 
 agreement he was entitled to a percentage of the net profit on the sale of 
 the CLM dealership to Sonic Automotive, Inc.  At trial the court allowed Shuman 
 to testify as to the construction of the term net profit in relation to the 
 dealership.
The parol evidence rule generally prohibits 
 the admission of extrinsic evidence to vary or contradict the terms of a contract.  
 Penton v. J.F. Cleckley & Co., 326 S.C. 275, 486 S.E.2d 742 (1997).  
 Parol evidence, however, may be admissible to ascertain the true meaning and 
 intent of the parties when the contract is ambiguous.  Id.; see also 
 Klutts Resort Realty, Inc. v. Down Round Dev. Corp., 268 S.C. 80, 232 
 S.E.2d 20 (1977).  An ambiguous contract is one capable of being understood 
 in more ways than just one or one unclear in meaning because it expresses its 
 purpose in an indefinite manner.  Penton, 326 S.C. at 280, 486 S.E.2d 
 at 745.  The subject-matter of the contract and the purpose of its execution 
 are material to the ascertainment of the intention of the parties and the meaning 
 of the terms they use, and when these are ascertained they must prevail over 
 the dry words of an agreement.  Chatfield-Woods Co. v. Harley, 124 S.C. 
 280, 286, 117 S.E. 539, 541 (1923) (citation omitted).  
Here, the term net profit was ambiguous 
 and the trial court allowed Shuman to explain the term within the context of 
 car dealerships.  We find this testimony did not violate the parol evidence 
 rule and did not vary or contradict the terms of the parties written agreements.
3.  The jury awarded Shuman $65,000 for his unpaid 
 wages claim.  The trial court doubled the award pursuant to the South Carolina 
 Payment of Wages Act.  CLM argues the trial court abused its discretion in doubling 
 the award.  Conversely, Shuman asserts that he was entitled to treble damages.
Section 41-10-80(C) of the Payment of 
 Wages Act provides that [i]n case of any failure to pay wages . . . the employee 
 may recover in a civil action an amount equal to three times the full amount 
 of the unpaid wages, plus costs and reasonable attorneys fees as the court 
 may allow.  S.C. Code Ann. § 41-10-80(C) (Supp. 2002).  
Our supreme court has held that a trial 
 court has the discretion to decide whether or not to award treble damages:  
 If there is a dispute over unpaid wages the employer acts at his peril and 
 the court in its discretion may award treble damages when the withholding was 
 unreasonable and there was no good faith wage dispute.  Rice v. Multimedia 
 Inc., 318 S.C. 95, 99, 456 S.E.2d 381, 383 (1995) (citation omitted).  Citing 
 Rice, this Court recently reiterated that the statutes explicit statement 
 that the employee may recover treble damages indicates the matter is committed 
 to the trial courts discretion.  ONeal v. Intermedical Hosp., 355 S.C. 
 499, 585 S.E.2d 526 (Ct. App. 2003).
We find the statute specifically provides the court 
 with discretion to award an amount equal to three times the amount of 
 the unpaid wages, rather than an amount up to three times the unpaid 
 wages, so the doubling of an unpaid wages award is not an option.  Consequently, 
 we reverse the trial courts doubling of the unpaid wages award and remand for 
 the court to decide, in its discretion, whether or not to award treble damages 
 on the unpaid wages claim.  The court should base its determination on the current 
 record and explain the grounds for its ruling. 
4.  CLM argues the trial courts award to Shuman 
 of $75,000 for attorneys fees was excessive and improper.  We find the award 
 of attorneys fees was not excessive under the circumstances of this case.  
 See Evans v. Taylor Made Sandwich Co., 337 S.C. 95, 100, 522 S.E.2d 
 350, 352 (Ct. App. 1999) (The amount of unpaid wages may be trebled and costs 
 and attorneys fees may be added pursuant to the Act.).  
5.  CLM asserts the trial court lacked jurisdiction 
 to enter an order prohibiting CLM from seeking disbursement of the escrowed 
 accounts.  We disagree.
Prior to the sale of the dealership to 
 Sonic, CLM entered into two escrow agreements covering a portion of the proceeds 
 of the sale of assets.  One of the escrow agreements is held with the Chicago 
 Title Insurance Company in Illinois and the other agreement is with the First 
 Union National Bank in North Carolina.  The North Carolina escrow agreement 
 was entered into to cover claims Shuman and Conway had brought against CLM.  
 The Chicago agreement contained funds set aside for contingent environmental 
 liabilities associated with the dealership property and contained the following 
 provisions:  (1) the agreement would be governed by the applicable laws of South 
 Carolina, (2) the parties submitted to personal jurisdiction in South Carolina, 
 and (3) the parties waive[d] any and all rights under the laws of any other 
 state to object to jurisdiction within the State of South Carolina.  Because 
 of the impending appeal and the concern that funds would not be available to 
 pay the final judgment, the trial court ordered CLM not to distribute the balance 
 of the funds without the courts approval, although certain designated expenditures 
 were exempted.  
We find the trial courts order merely prohibited 
 CLM from making a request to disburse the funds for any purpose other than those 
 specifically authorized by the escrow agreements.  Contrary to CLMs assertion, 
 the trial court did not merge the funds or make any orders directly affecting 
 the balance in the funds.  Moreover, as Shuman points out, one of the agreements 
 expressly consented to jurisdiction in South Carolina and the court had jurisdiction 
 over the parties in this action.  We therefore find no error in the trial courts 
 order regarding the escrow agreements.
6.  Shuman argues the trial court erred in failing 
 to provide him with prejudgment interest on the $175,000 judgment because it 
 was a sum certain.  We find no error.
The law allows prejudgment interest on 
 obligations to pay money from the time when, either by agreement of the parties 
 or operation of law, the payment is demandable, if the sum is certain or capable 
 of being reduced to certainty.  Babb v. Rothrock, 310 S.C. 350, 353, 
 426 S.E.2d 789, 791 (1993).  Here, the issue of whether Shuman was entitled 
 to any damages was heavily disputed between the parties and was not clear from 
 the parties agreements.  CLM disputed the existence of the agreements on which 
 Shuman based his claims for breach of contract and failure to pay wages, alleging 
 Conway lacked the authority to enter into the agreements on its behalf.  CLM 
 also disputed the amount of any severance pay due to Shuman and the parties 
 disagreed on whether any net profit was due on the sale of the business as well 
 as its method of calculation.  Under the circumstances, the amount of severance 
 and unpaid wages that Shuman may have been entitled to was not readily ascertainable, 
 as was evidenced by the jury award, which was somewhere in between the amounts 
 argued to the jury; therefore, he was not entitled to prejudgment interest.    

7.  Shuman asserts the trial court erred in finding 
 the amount the jury awarded him for unpaid wages was included in the amount 
 the jury awarded for his contract claim.  We disagree.
In charging the jury, the trial court 
 explained that Shumans claims for breach of contract and failure to pay wages 
 overlapped because both included Shumans claim of $65,000 in unpaid salary 
 and the possible $325,350 he claimed was owed to him as incentive pay.  The 
 trial court further stated to the jury:  If you find that he is entitled to 
 any of that money on both of the claims, he wont be paid twice.  The jury 
 returned two verdict forms.  The first form stated:  We find [CLM] knowingly 
 failed to pay [Shuman] wages due him as required by law in the amount of $65,000.00 
 Dollars.  The second form stated:  We find [CLM] broke the contract of employment 
 and must pay [Shuman] $175,000 Dollars actual damages.  
We find that, in light of the trial courts 
 instructions to the jury and the language of the two verdict forms, the trial 
 court correctly found that the amount the jury awarded Shuman for his wage claim 
 was included in the amount awarded for the breach of contract claim.
CONCLUSION
We affirm all of the trial courts rulings 
 with the exception of its doubling of the jurys award for unpaid wages, which 
 we reverse and remand upon our finding that the Payment of Wages Act only provides 
 a trial court with the discretion to award either treble damages or no additional 
 damages.  Upon remand, the trial court shall use the existing record in making 
 its determination and should give the basis for its ruling.
AFFIRMED IN PART, REVERSED IN PART, and REMANDED.
GOOLSBY and ANDERSON, JJ., and CURETON, A.J., concur.

 
 
 [1]   CLM also includes Haywood B. Hyman, Sr. where appropriate as both 
 are parties to this appeal.