570 S.E.2d 176

**Judy MIZELL and John Mizell, Petitioners,**

v.

**Dr. Alfred L. GLOVER and Alpine Podiatry
Center, P.A., Respondents.**

No. 25527.

Supreme Court of South Carolina.

Heard Feb. 21, 2002.
Decided Sept. 3, 2002.

394

Randall M. Eason, of Lancaster, and Gilbert Scott Bagnell, of Columbia, for petitioners.

Montieth P. Todd, of Sowell, Todd, Laffitte, Beard & Watson, L.L.C., of Columbia, for respondents.

CHIEF JUSTICE TOAL:

Judy and John Mizell ("Mizells") appeal the Court of Appeals' decision affirming the jury's verdict for the defendants, Dr. Alfred L. Glover and Alpine Podiatry Clinic (collectively referred to as "Dr. Glover"), in this medical malpractice suit. *Mizell v. Glover*, 339 S.C. 567, 529 S.E.2d 301 (Ct.App.2000).

### FACTUAL/PROCEDURAL BACKGROUND

On March 2, 1993, Mrs. Mizell visited Dr. Glover for the first time for pain resulting from corns on the fourth and fifth toes of her right foot. The pain began after she started a new job requiring her to stand for long periods of time. On March 11, 1993, just nine days after her first visit, Dr. Glover performed surgery to correct what he diagnosed as "hammertoes." The surgery involved removing the toe joints that were rubbing together and causing the corns, and then disconnecting the tendons to the fourth and fifth toes. Apparently, Mrs. Mizell was surprised to learn exactly what Dr. Glover had done after the surgery. According to her testimony, she believed Dr. Glover was going to file down the bones underneath the corns, not remove the bones, and believed she would be out of work for a few days, not six weeks' as she claims Dr. Glover informed her the day after surgery.

Following the hammertoe surgery, Mrs. Mizell testified she suffered from intense pain, including swelling, discoloration,

and alternating differences in the temperature of her foot. These symptoms are reflected in some of Dr. Glover's notes although he seems to attribute them to her inability to tolerate medication for pain and inflammation. Mrs. Mizell continued to suffer pain around the toes already operated on, and, in addition, her second and third toes became painful. According to both Mrs. Mizell and Dr. Glover's accounts, these toes became increasingly contracted in the weeks following her first surgery. Dr. Glover believed the contraction of her second and third toes · could be the cause of Mrs. Mizell's lingering pain. To alleviate that pain, on April 27, 1993, he performed a second surgery to release the contractures in the tendons, allowing the toes to return to their normal position.

After this second procedure, a painful lump developed on the bottom of Mrs. Mizell's foot. Her foot hurt so badly that she would not allow Dr. Glover to touch it. After examining an x-ray of her foot, Dr. Glover preliminarily diagnosed the bump as a Morton's Neuroma. On June 3, 1993, Dr. Glover performed exploratory surgery in which he confirmed the bump was a Morton's Neuroma and removed it. Although the Mizells appear to question whether the bump was a Morton's Neuroma, the pathologist who examined the tissue extracted from Mrs. Mizell's foot testified it was a Morton's Neuroma.

This third surgery provided little relief to Mrs. Mizell, and she continued to complain to Dr. Glover. Dr. Glover sent her to physical therapy around the first of June, but therapy provided no relief. On June 29, 1993, Dr. Glover referred Mrs. Mizell to her family physician, Dr. Still, to rule out any systemic problems, such as lupus or Raynaud's Disease, that could be causing her continued pain. In his letter to Dr. Still, Dr. Glover noted discoloration in Mrs. Mizell's foot and hyper-sensitivity to cold. On July 13, 1993, Mrs. Mizell returned to Dr. Glover, reporting that Dr. Still had eliminated the possibility of any vascular problems after a full work-up. Dr. Glover gave her a steroid injection in another attempt to resolve the pain, but it was unsuccessful. Finally, on July 27, 1993, Mr. Mizell stated he wanted to take his wife to see an orthopaedist in Charlotte, Dr. Gill. Dr. Glover sent a letter and all his records to Dr. Gill.

On July 29, 1993, Mrs. Mizell visited Dr. Gill. He diagnosed "possible early [Reflex Sympathetic Dystrophy]," [1] gave her a prescription for a custom-made orthopaedic shoe, and advised her to walk on her foot as much as possible. Dr. Gill scheduled Mrs. Mizell to return in two months. When she returned, Dr. Gill believed her condition had deteriorated, and he referred her to the Southeastern Pain Clinic for further diagnosis and treatment.

Mrs. Mizell received some treatment at the pain clinic for RSD (including sympathetic blocks), but testified she received no lasting relief from it. She stated the last treatment option the pain clinic gave her was to attach a stimulator box to a wire along her spine through which she might be able to control the pain. She and Mr. Mizell testified they declined the treatment because they were told it carried a risk of paralysis. Dr. Romanoff, an anesthesiologist at the Southeastern Pain Clinic, testified in his deposition (read at trial) that he believed Mrs. Mizell was totally disabled, but that she could have received some relief from the stimulator which she chose not to pursue.

In February 1996, the Mizells brought this medical malpractice and loss of consortium action against Dr. Glover. The Mizells alleged Dr. Glover committed malpractice, breaching the podiatrists' duty of care, by failing to diagnose Mrs. Mizell with RSD during his treatment of Mrs. Mizell. Mrs. Mizell claims she is totally disabled as a result of Dr. Glover's failure to diagnose the RSD. Dr. Glover denied the malpractice allegations and the case went to trial in December of 1997. The jury returned a verdict for Dr. Glover and the Mizells appealed. The Court of Appeals affirmed, and this Court granted certiorari. The following evidentiary issues are before this Court:

I. Are the Mizells entitled to a new trial because Dr. Glover's counsel cross-examined the Mizells' expert witness, Dr. Marne, extensively regarding a jury interroga-

---

1. Reflex Sympathetic Dystrophy ("RSD") is a rare condition affecting the sympathetic nervous system, usually in an extremity, resulting in ongoing cycles of extreme pain. It is often triggered by an accident, surgery, or other injury. Early diagnosis and treatment of the condition is critical to curing RSD. If it is not treated early enough, the condition and the pain caused by it can be become permanent.

tory from a separate civil suit against Dr. Marne, and then misstated that jury's finding in his closing statement?

II. Are the Mizells entitled to a new trial because the trial court refused to admit an article written by Dr. Glover's testifying expert, Dr. Buckholz, as an exhibit, but allowed the Mizells' counsel to publish portions of the article during cross-examination?

III. Are the Mizells entitled to a new trial because the trial court permitted a podiatrist, testifying as an expert for Dr. Glover, to comment on the treatment of a medical doctor at the Southeastern Pain Clinic?

## LAW/ANALYSIS

### I. Jury Interrogatory

The Mizells argue that Dr. Glover's attorney improperly questioned their expert, Dr. Marne, about a jury interrogatory from a separate civil suit against Dr. Marne. The Mizells contend the evidence of the jury's finding was extrinsic evidence prohibited under Rule 608(b) of the South Carolina Rules of Evidence ("SCRE"). The Mizells also argue that questions regarding the jury interrogatory were improper because the case was settled and the interrogatory did not represent a final judgment. We agree that the evidence of the jury's finding was improperly admitted.

The interrogatory in question arose out of a suit by Minnesota Mutual Life Insurance Company ("Minnesota Life") against Dr. Marne for making allegedly false statements regarding a personal disability claim he filed. At trial, a Florida jury was asked by interrogatory if Dr. Marne had made misrepresentations to his insurance company. The jury answered that he had. The jury was then asked if Dr. Marne committed fraud, and they answered that the fraud claim could not survive because of a statute of limitations problem. After the interrogatories were returned, the court entered judgment against Dr. Marne that did not include fraud. While a motion for a new trial was pending, the parties settled the matter. Accordingly, the Mizells argue there was no final judgment.

At the Mizells' trial against Dr. Glover, Dr. Marne, a podiatrist, testified as an expert for the Mizells. The Mizells filed a motion in limine before trial to exclude any evidence relating to Minnesota Life's lawsuit against Dr. Marne. The court denied the motion, and the Mizells renewed their motion immediately before Dr. Marne's testimony.[2] In arguing against the motion, Dr. Glover's counsel contended the interrogatory in question was admissible under Rule 608, SCRE [3] "as a matter affecting the credibility of the witness." The court denied the motion again, stating it would allow questioning of Dr. Marne regarding the trial for impeachment purposes pursuant to Rule 608, SCRE.

The Court of Appeals' opinion on this issue was split. Judge Goolsby found the question regarding the jury interrogatory did not constitute extrinsic evidence. *Mizell v. Glover*, 339 S.C. 567, 529 S.E.2d 301 (Ct.App.2000). Judge Connor, joined by Judge Howard, found the issue was not preserved for review. *Id.* Although she declined to address the issue fully, Judge Connor stated she believed, even if the interrogatory was inadmissible extrinsic evidence, that the error was harmless in light of Dr. Marne's other testimony regarding the suit. *Id.*

 Dr. Glover argues the Court of Appeals should be affirmed on this issue because it was not preserved for review. We disagree. In order to preserve an issue for appellate review, the issue must have been raised to and ruled upon by the trial court. *Holy Loch Distributors Inc. v. Hitchcock*, 340 S.C. 20, 531 S.E.2d 282 (2000); *Wilder Corp. v. Wilke*, 330 S.C. 71, 497 S.E.2d 731 (1998).

---

2. The Mizells' counsel argued for exclusion of any evidence of fraud because the final judgment did not make any finding of fraud, but did not mention Rule 608 specifically.

3. Rule 608(b) provides:

 Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility, other than conviction of a crime as provided in Rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness' character for truthfulness or untruthfulness or. . . .

In this case, the Mizells raised this issue—exclusion of the evidence from the Minnesota Life suit—on two occasions. During the arguments on the second motion, Dr. Glover's counsel argued specifically that the interrogatory from the civil suit was admissible under Rule 608, SCRE. The trial court agreed with Dr. Glover and admitted the evidence under Rule 608. We believe this issue was preserved through the Mizells' two motions. Rule 608 was the only ground given by the trial court for admitting the motion. As such, it is only fair that the Mizells be able to argue that the trial court erred when it admitted the interrogatory under that Rule.

Because we find the issue was preserved for review, we must address whether or not Dr. Glover's question in which he recited the jury interrogatory and answer verbatim constituted improper extrinsic evidence (prohibited under Rule 608(b), SCRE). The Mizells argue this question, even without admission of the physical record of the interrogatory, constituted improper extrinsic evidence. To the contrary, Dr. Glover contends there is a distinction between admitting the physical record of the jury interrogatory and admitting the oral record of the interrogatory, and that the oral record does not qualify as extrinsic evidence.

Rule 608(b) permits inquiry into specific instances of a witness' conduct during cross-examination, if such conduct is probative of the witness' truthfulness or untruthfulness. The Rule specifically states that such instances of conduct may not be proved by extrinsic evidence. All parties agree that documentary evidence, such as the record containing the jury interrogatory and response, would be inadmissible as extrinsic evidence.

■■■ We believe extrinsic evidence can be oral or written, as it is the source of the evidence that determines whether it is extrinsic, not whether it is introduced in oral or written form at trial. Rule 608 permits questioning about the underlying event from the actor in the event, not rumors or reports of what others perceived about the event. For example, the Mizells concede Dr. Glover could have asked Dr. Marne, "Did you make misrepresentations to your insurance company regarding a claim?" However, asking whether a *jury found* he made misrepresentations to his insurance company crosses

over into the extrinsic evidence category. Essentially, Rule 608(b) allows specific instances of conduct to be *inquired into* on cross, but does not allow those instances of conduct *to be proved* by extrinsic evidence.[4] Reading a jury interrogatory into the record is more than inquiry into past conduct; the purpose of doing so is to prove past conduct. Although Dr. Marne could have been questioned (and was questioned) about the conduct that was the subject of the suit, he should not have been questioned directly regarding what a previous jury allegedly concluded about such conduct.

■ Although the trial court improperly admitted the evidence of the jury's interrogatory, Dr. Glover argues the error was harmless. We disagree. Although Dr. Glover correctly points out that the Mizells' counsel elicited information from Dr. Marne about the Minnesota Life suit on direct[5] and that he properly impeached Dr. Marne on his professional history and qualifications during cross-examination, he fails to consider the impact of his *misstatement of the jury's finding* in his closing argument. In closing, Dr. Glover's counsel told the jury Dr. Marne had been found *"guilty of fraud by a jury"* and admonished the jury "to consider all those things in deciding on the credibility of Dr. Marne." This statement is incorrect and highly prejudicial.

---

4. The Mizells argued at trial and continue to argue before this Court that because the jury finding was not part of a final judgment, it was not an instance of conduct and, therefore, was not admissible. Admitting jury findings from prior civil cases is problematic whether the findings are final or not because the findings are always extrinsic evidence, most likely admitted to *prove* a witness' conduct (exactly what Rule 608(b) is intended to prevent). Rule 609, SCRE, permits admission of evidence of criminal convictions for impeachment purposes, and is pointedly silent as to admission of civil judgments. Further, Rule 803(22) carves an exception to the hearsay rule for admission of *criminal convictions,* and does not mention civil judgments or verdicts. Further, the rules prohibit admission of more than the fact of conviction; they do not permit the record of the trial to be admitted along with the conviction. *See United States v. Robinson,* 8 F.3d 398 (7th Cir.1993). Admitting an *interrogatory,* a small piece of the verdict, would seem to be prohibited under the same rationale.

5. In response to a question by the Mizells' counsel on direct, Dr. Marne stated he had been named in six malpractice suits, another lawsuit, and a divorce and explained the circumstances of the suit against him by Minnesota Life, admitting he had to settle with the insurance company for a large sum of money.

Dr. Marne was the Mizells' only expert witness to testify that Dr. Glover had breached the *podiatrists'* standard of care.[6] As such, his testimony and credibility were critical to the Mizells' case. Dr. Glover used the alleged jury finding not simply to prove past conduct, but to show what a previous jury had found regarding Dr. Marne. The purpose of introducing this evidence was to argue to this jury that they should be influenced by the actions of a previous jury. Further, Dr. Glover's counsel gave the jury false information when he told them Dr. Marne had been found *"guilty of fraud."* [7] In light of these circumstances, we do not believe the Mizells received a fair trial.

Moreover, we note the Minnesota Life jury interrogatory was inadmissible on an additional ground as hearsay. We find persuasive the jurisprudence developed by the Fourth Circuit and other federal courts which have recognized that judicial findings of fact from one trial constitute hearsay when offered for admission in the context of another trial. *See Nipper v. Snipes,* 7 F.3d 415 (4th Cir.1993); *U.S. Steel, LLC v. Tieco,* Inc., 261 F.3d 1275 (11th Cir.2001); *U.S. v. Jones,* 29 F.3d 1549 (11th Cir.1994); *Blue Cross and Blue Shield v. Philip Morris, Inc.,* 141 F.Supp.2d 320 (E.D.N.Y.2001).[8] In *Nipper,* the Fourth Circuit held that judicial findings constitute hearsay and do not fall within any of the exceptions to the

---

6. The Mizels introduced the deposition of Dr. Romanoff, an anesthesiologist specializing in pain management at the Southeastern Pain Clinic, but he did not testify regarding the podiatrists' standard of care. He reviewed Dr. Glover's records and opined that Mrs. Mizell's chances of recovery would have been better if she had been referred to him earlier. Dr. Romanoff's deposition testimony is discussed in Part III of this opinion.

7. As discussed, the jury did not find Dr. Marne had committed fraud in the civil context and certainly not that he was *guilty of fraud* which connotes a criminal conviction.

8. Dr. Glover cites several federal cases in support of his argument that credibility assessments by judges are not extrinsic evidence and are admissible in subsequent trials. *See United States v. Amahia,* 825 F.2d 177 (8th Cir.1987); *United States v. Terry,* 702 F.2d 299 (2d Cir.1983). Dr. Glover did not discuss the precedent of the Fourth Circuit discussed in the text above. We find the Fourth Circuit employed the correct analysis, and that the jury's response to the interrogatory is a judicial finding constituting inadmissible hearsay.

hearsay rule, including the exception for public records, Rule 803(8), FRE. *Nipper.* The Fourth Circuit made clear that its holding was firmly rooted in the common law. *Id.* (Citing 5 John H. Wigmore, *Wigmore on Evidence* § 1671a (James H. Chadbourn rev.1974) (citations omitted)).

The federal courts addressing this issue point to the great weight and obvious prejudicial effect that credibility assessments of witnesses by judges have on subsequent juries. *See Philip Morris,* 141 F.Supp.2d 320 (denying admission of a judge's statement regarding credibility of expert witness for impeachment of that expert at a subsequent trial). Although *Philip Morris* involved the credibility assessment of a judge and not the assessment of a jury, the jury's factual finding introduced in this case is hearsay nonetheless, and we believe, is equally prejudicial. *See U.S. Steel v. Tieco* (finding appellants were prejudiced by the admission of a previous judge's factual opinion into a subsequent trial because appellees relied on the opinion throughout the trial and advised the jury during closing argument to use the opinion to make their own credibility determinations). As discussed, Dr. Glover's counsel told the jury in this case (incorrectly) that Dr. Marne was found "guilty of fraud" and that the jury should consider that in assessing the credibility of Dr. Marne.

We find the jury interrogatory constituted improper extrinsic evidence, the admission of which constituted reversible error. In addition, the jury interrogatory constitutes inadmissible hearsay. We reverse the Court of Appeals on this issue and remand for a new trial.

## II. Medical Treatise

■ The Mizells argue that the trial court improperly denied admission of a chapter in a podiatric textbook, written by Dr. Glover's expert, as an exhibit at trial. We disagree.

At trial, Dr. Glover called Dr. Buckholz, a podiatrist, to testify as an expert. Dr. Buckholz testified that Dr. Glover had not breached the standard of care in his treatment of Mrs. Mizell or in his failure to diagnose RSD. The Mizells claimed Dr. Buckholz's testimony conflicted with an article he wrote cautioning podiatrists to look for the warning signs of RSD. On cross-examination, the Mizells sought to introduce the

chapter from the podiatric textbook in which Dr. Buckholz's article appeared. The trial court ruled the document inadmissible, but allowed the Mizells' counsel to cross-examine Dr. Buckholz extensively about his article, reading portions of the article into the questions.

Dr. Glover argues that Rule 803(18), SCRE controls. Rule 803(18) provides that the following works are not excluded by the hearsay rule:

> To the extent called to the attention of an expert witness upon cross-examination or relied upon by the expert witness in direct examination, statements contained in published treatises, periodicals or pamphlets on a subject of history, medicine, or other science or art, established as a reliable authority by the testimony or admission of the witness or by other expert testimony or by judicial notice. *If admitted, the statements may be read into evidence but may not be received as exhibits.* This rule is in addition to any statutory provisions on this subject.

(emphasis added).

The Mizells argue the Court of Appeals erred in upholding the trial court's exclusion of the article itself. The Mizells contend that Rule 803(18), SCRE would apply if the article had been written by someone other than the witness, Dr. Buckhloz, but as it was written by Dr. Buckholz, it should have been admitted to impeach him under *LaCount v. General Asbestos & Rubber Co.*, 184 S.C. 232, 192 S.E. 262 (1937).

■ In *LaCount,* this Court found the trial court committed error by not admitting scientific writings prepared by the testifying experts. However, the Court found the error to be harmless because the court permitted full cross-examination of the witnesses regarding the contents of the articles they had written. *LaCount,* however, does not control in this case. It was decided long before the adoption of the SCRE. Rule 803(18) is directly on point, and it does not distinguish between treatises written by the testifying witness and treatises authored by others. Rule 803(18) applies to both treatises written by the witness and those written by others, barring admission of the treatise itself in both cases.

Therefore, it was proper for the trial court to deny admission of the article as an exhibit, but to allow the Mizells to

cross-examine Dr. Buckholz regarding the article, publishing portions of it through their questions.[9] Accordingly, we affirm the Court of Appeals on this issue.

## III. Scope of Podiatrist Expert Testimony

■ The Mizells argue the trial court erred by permitting Dr. Martin, a podiatrist testifying as an expert for Dr. Glover, to testify regarding Mrs. Mizell's treatment with Dr. Romanoff, an anesthesiologist at the Southeastern Pain Clinic. We disagree.

The Mizells' introduced the deposition of Dr. Romanoff, in which he reviewed Dr. Glover's treatment records of Mrs. Mizell, to show that Dr. Glover erred in not diagnosing Mrs. Mizell with RSD earlier. In turn, Dr. Glover called Dr. Martin to cast doubt on Dr. Romanoff's deposition testimony by suggesting that the pain clinic where Dr. Romanoff practices also had trouble diagnosing Mrs. Mizell with RSD. Dr. Martin related his understanding, from reviewing the records, of what took place at the pain clinic.

Dr. Martin testified, in part, "there was a very confusing picture to the pain management doctors...." The Mizells' counsel objected, stating Dr. Martin was only qualified as a podiatrist, not as anesthesiologist capable of treating pain. The court overruled the objection on grounds that Dr. Martin's opinion was based upon a review of the records in the case, permissible under the rules pertaining to experts.

The Court of Appeals found no error in the trial court's ruling, finding Dr. Martin's testimony was merely a recital of the initial treatment at the clinic rather than opinion on the quality and scope of the clinic's treatment. On appeal, the Mizells argue again that Dr. Martin, although an expert in

---

9. Although Rule 803(18) controls, we note any error in not admitting the article as an exhibit would be harmless error under *LaCount.* The Mizells' counsel cross-examined Dr. Buckholz regarding the contents of his article extensively, with no limitation by the court. By doing so, the Mizells' counsel "thereby placed the jury in possession of [its] contents," making the court's failure to admit the chapter itself harmless. *LaCount,* 184 S.C. at 242, 192 S.E. at 267.

podiatry, was not qualified to testify as an expert in the area of pain management.

■ Rule 702, SCRE, provides:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

This Court has given the trial court wide discretion in determining the qualification of expert witnesses and the admissibility of their testimony. *McGee v. Bruce*, 321 S.C. 340, 468 S.E.2d 633 (1996); *Creed v. Columbia*, 310 S.C. 342, 426 S.E.2d 785 (1993). A trial court's ruling to exclude or admit expert testimony will not be disturbed on appeal absent a clear abuse of discretion. *Jenkins v. E.L. Long Motor Lines*, 233 S.C. 87, 103 S.E.2d 523 (1958).

■ For a court to find a witness competent to testify as an expert, the witness must be better qualified than the jury to form an opinion on the particular subject of the testimony. *Gooding v. St. Francis Xavier Hosp.*, 326 S.C. 248, 487 S.E.2d 596 (1997). In *Gooding*, this Court found error in the trial court's exclusion of the testimony of an Emergency Medical Technician ("EMT") regarding intubation procedures, finding the EMT had sufficient knowledge of the procedure to give an opinion on a doctor's performance of the procedure. This Court found the disparity in training and education between the EMT and the doctor he testified against was relevant to the EMT's credibility as a witness, but found the difference in qualifications affected only the weight, *not the admissibility*, of his testimony. *Id.*

Under *Gooding* and Rule 702, SCRE, the trial court correctly allowed Dr. Martin to testify regarding Mrs. Mizell's treatment at the pain clinic, even though he was not qualified himself to administer the treatment he recounted. The jury was aware of Dr. Martin's credentials as a podiatrist and of Dr. Romanoff's credentials as an anesthesiologist. Therefore, they could have given Dr. Martin's testimony less weight than Dr. Romanoff's. Accordingly, Dr. Martin's limited opinion regarding Mrs. Mizell's treatment at the pain clinic was

correctly admitted and upheld by the Court of Appeals. Therefore, we affirm the Court of Appeals on this issue.

## Conclusion

For the foregoing reasons, we **AFFIRM IN PART and REVERSE IN PART** the opinion of the Court of Appeals and **REMAND** for a new trial.

MOORE, WALLER, BURNETT and PLEICONES, JJ., concur.