THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
 Dept. of Health and Human Service, Respondent,
 
 
 

v.

 
 
 
 Moses L. Miller, as PR of the estate of Genobia Washington, Appellant.
 
 
 

Appeal From Laurens County
Wyatt T. Saunders, Jr., Circuit Court Judge

Unpublished Opinion No.  2005-UP-154
Submitted December 1, 2004  Filed March 1, 2005

AFFIRMED

 
 
 
 Zack E. Townsend, of Orangeburg, for Appellant.
 George R. Burnett, of Columbia, for Respondent.
 
 
 

PER CURIAM:  The probate court appointed Moses Miller as the personal representative for the estate of his mother, Genobia Washington.  The South Carolina Department of Heath and Human Services (DHHS) filed a rule to show cause for Millers failure to pay a claim filed by DHHS against Washingtons estate.  After two hearings on the matter, the probate court issued an order finding DHHSs claim valid and ordering the estate to pay DHHS.  Miller appealed the probate courts order to the circuit court, which affirmed the probate courts order.  We also affirm.1 
FACTS

Before her death, Genobia Washington brought a tort action against a third party for injuries she suffered when the van she was riding in came to an abrupt stop causing her to fall out of her wheelchair.  After Washingtons death, Miller proceeded with the action.  DHHS informed Miller it had a right to an assignment from Washington for amounts paid on her behalf by Medicaid as a result of the accident.  Miller settled the tort action before trial for $57,500.  The trial judge, in his order, specified the terms of the settlement agreement and described how the $57,500 would be allocated.  In relation to the amount paid to DHHS, the order states: 

 It further appears that out of the settlement proceeds, the total sum of Seven Thousand Two Hundred Forty-Four and 07/100 ($7,244.07) Dollars is being paid to the South Carolina Department of Health and Human Services as full and final settlement of any liens held by the South Carolina Department of Health and Human Services.  
 . . . 
 Moses Miller, as personal representative of the estate of Genobia Washington, is authorized and directed to pay the South Carolina Department of Health and Human Services (SCDHHS) the sum of Seven Thousand Two Hundred Forty-Four and 07/100 ($7,244.07) Dollars as full and final satisfaction of any lien held by SCDHHS and that such payment is an accord and satisfaction of the said lien . . . 

After Washingtons death, DHHS notified the probate court and Miller of an $81,903.08 claim against Washingtons estate.  Miller did not pay the claim, and DHHS filed a rule to show cause with the probate court seeking payment.  The probate court conducted a hearing, during which the parties stipulated that the amount of the claim in dispute was $74,659.01.  
Prior to the initial hearing, Miller filed a Corrected Amended Inventory and Appraisement of Washingtons estate with the probate court.  This filing reflected assets owned by Washington at her death, including her home and property upon which it sits.  Under the description of the property, the following notation was made: This property was condemned by the State of South Carolina D.O.T. for Interstate Right-of-Way.  No money was exchanged.  In addition, neither this filing, nor the Final Accounting filed by Miller, reflected the receipt of any money with regard to the condemnation.  
During the hearing, Miller called Donna Crosby, the Director of Right-of-Way for the CRM West Program, which acts as a consultant performing right-of-way acquisitions for the South Carolina Department of Transportation (DOT).  While Millers attorney examined Crosby, he questioned her about a release executed by DHHS.  DHHS executed a claim release releasing its $81,903 creditor claim filed against Washingtons estate solely to allow a right-of-way on Washingtons property to be conveyed to the DOT.  Pursuant to the claim release, DHHS retained its claim against the remainder of Washingtons estate.  When Millers attorney asked Crosby if any cash payments were made to Miller in connection with the conveyance to the DOT, the following dialog between Millers attorney and Crosby occurred.

 [Crosby].  We issued a check for $18,200.
 [Millers Attorney].  $18,200?
 A.      Yes
 Q.     For payment of the actual piece of property?
 A.   Yes.
 Q.     And who was that paid to?
 A.     Mr. Miller - - I believe it was made payable to Mr. Miller, if I remember correctly.  

After cross-examination by the attorney for DHHS, who confirmed the payment outright to Miller, the probate court then questioned Crosby as to the nature of the property rights the DOT received.  Crosby informed the court that the purchase of the property was a fee simple conveyance, and the DOT now owned the property outright.  In light of Crosbys testimony, the probate court issued a Sua Sponte Interim Order requesting a copy of the check for $18,200 payable to Miller.  In addition, the court noted a discrepancy in the release signed by Melinda Clark, a representative from DHHS.  The claim release is dated December 18, 2000 but it refers to a Deed, dated December 26, 2000.  Therefore, the court requested Clarks testimony as to the facts and circumstances concerning the release.  
Miller also called Doris Pope as a witness during the initial hearing before the probate court.  He initially questioned her about her knowledge of the settlement with DHHS relating to the tort action, but proceeded to ask her about her claim against Washingtons estate.  On cross-examination, Pope revealed she was Millers fiancé and she did not have a written contract for the services she provided to Washington.  The probate court further inquired about Popes services and her lack of records as to those services.  During the probate courts examination of Pope, she admitted she lived with Miller and Washington for the past two years and did not pay rent.  
The information requested by the probate judge was provided at a subsequent hearing.  The probate court then issued a final order declaring DHHSs claim valid.  In addition, the probate court ordered Miller to pay the $18,200 he received from SCDOT and $2,500 reflecting the value of the household furnishings he received, plus interest, to Washingtons estate.  The probate court also determined the claim presented by Doris Pope was a sham, and ordered her to repay the $5,000 she received from Washingtons estate, plus interest.  Miller appealed to the circuit court, which affirmed the order of the probate court.  This appeal followed.
STANDARD OF REVIEW

Proceedings in the probate court regarding claims for money due are actions at law.  Matter of Estate of Tollison, 320 S.C. 132, 135, 463 S.E.2d 611, 613 (Ct. App. 1995).  A probate courts findings of fact in an action at law will not be disturbed on appeal unless the record reveals no evidence to support the courts findings or the probate court was controlled by an error of law.  Id.  
LAW/ANALYSIS

I.  Jurisdiction Over DHHSs Claim for Reimbursement
Miller argues the probate court erred in determining the circuit court did not have jurisdiction to issue an order satisfying both of DHHSs claims.  Essentially, Miller asserts the circuit courts order stating the $7,244.07 payment from the settlement as full and final settlement of any liens held by the South Carolina Department of Health and Human Services, acted as a full settlement of all claims by DHHS against Washington and her estate.  Therefore, he maintains the probate court does not have jurisdiction to review the claim by DHHS against Washingtons estate.  We disagree.   
DHHS brought its claim against Washingtons estate pursuant to section 43-7-460 of the South Carolina Code (Supp. 2004).  This section pertains to DHHSs ability to recover amounts paid for nursing facility care from a recipients estate.  This section provides, in pertinent part: 

 (A) The State Department of Health and Human Services shall seek recovery of medical assistance paid under the Title XIX State Plan for Medical Assistance from the estate of an individual who:
 . . . 
 
 (2) was fifty-five years of age or older when the individual received medical assistance, but only for medical assistance consisting of nursing facility services, home and community-based services, and hospital and prescription drug services provided to individuals in nursing facilities or receiving home and community-based services.
 

§ 43-7-460 (emphasis added).  Section 62-1-302 of the South Carolina Code (Supp. 2004), states the subject matter jurisdiction of the probate court and provides: 

 (a) To the full extent permitted by the Constitution, and except as otherwise specifically provided, the probate court has exclusive original jurisdiction over all subject matter related to:
 
 (1)  estates of decedents, including the contest of wills, construction of wills, and determination of heirs and successors of decedents and estates of protected persons . . .
 

Section 62-3-104 of the South Carolina Code (1987) describes the procedure under which claims against a decedents estate will be administered.  This section states:  After the appointment and until distribution, all proceedings and actions to enforce a claim against the estate are governed by the procedure prescribed by this article [§§62-3-101 et seq.].  § 62-3-104.  
DHHS brought a claim seeking reimbursement for Medicaid payment made on Washingtons behalf for long-term care services provided to her in her home pursuant to section 43-7-460.  Section 43-7-460, as cited above, states claims under this section must be brought against the recipients estate.  Because the Probate Code gives the probate court exclusive original jurisdiction over all matters relating to a decedents estate, including claims against that estate, the probate court in this case clearly had exclusive original jurisdiction to determine the validity of DHHSs claim.  Therefore, the probate court did not err in determining the circuit court did not have jurisdiction over this claim and could not have declared it satisfied in its order.  
II.  Two Separate Claims
Miller argues the probate court erred in determining DHHS had two separate claims.  He maintains the claim filed by DHHS, pursuant to section 43-7-440 of the South Carolina Code (Supp. 2004) and asserting its right to seek subrogation for medical expenses paid on behalf of Washington, is the same claim brought against her estate in this action.  He asserts the only difference in that claim and the claim presented in this action is DHHS brought the former claim against Washington, and DHHS brought the later claim against her estate.  We disagree.  
In order to address this issue, we must compare the two statutes governing the claims brought by DHHS.  First, DHHS brought a claim for subrogation and assignment of rights pursuant to sections 43-7-410 to 450 of the South Carolina Code (Supp. 2004), seeking recovery for payments made by Medicaid as a result of the accident in which Washington was injured.  Section 43-7-420(a), pertaining to DHHSs right of assignment of amounts recovered from third parties states:  Every applicant or recipient, only to the extent of the amount of the medical assistance paid by Medicaid, shall be deemed to have assigned his rights to recover such amounts so paid by Medicaid from any third party or private insurer to the State Health and Human Services Finance Commission.  Section 43-7-430(a), pertaining to DHHSs right to subrogation, states:  The State Health and Human Services Finance Commission shall be automatically subrogated, only to the extent of the amount of medical assistance paid by Medicaid, to the rights an applicant or recipient may have to recover such amounts so paid by Medicaid from any third party or private insurer.
Second, as stated previously, DHHS filed this claim against Washingtons estate seeking reimbursement for long-term care services paid by Medicaid.  DHHS brought this claim pursuant to section 43-7-460 of the South Carolina Code (Supp. 2004).  This section states:

 (A) The State Department of Health and Human Services shall seek recovery of medical assistance paid under the Title XIX State Plan for Medical Assistance from the estate of an individual who:

                   . . . 

 
 (2) was fifty-five years of age or older when the individual received medical assistance, but only for medical assistance consisting of nursing facility services, home and community-based services, and hospital and prescription drug services provided to individuals in nursing facilities or receiving home and community-based services.
 

In comparing the nature of these two claims and the statutes under which DHHS brought these claims, we find these claims are two separate and distinct claims and were brought under separate and unrelated sections of the South Carolina Code.  The prior claim was against Washington for payments made by Medicaid as a result of an accident for which she recovered from a third party; whereas, this claim is a claim against Washingtons estate for reimbursement for payments made by Medicaid for long-term care services.  DHHS brought the prior claim pursuant to a statute allowing recovery from a third party tortfeasor.  Contrarily, DHHS brought this claim pursuant to a statute allowing for recovery from a recipients estate.  
The letter from DHHS satisfying the earlier claim based on the tort recovery and settling for the $7,244.07 payment specifically included a release from the Casualty Recovery Department of DHHS only.  When a contract is unambiguous a court must construe its provisions according to the terms the parties used; understood in their plain, ordinary, and popular sense. Schulmeyer v. State Farm Fire & Cas. Co., 353 S.C. 491, 495, 579 S.E.2d 132, 134 (2003).  Therefore, we find the probate court did not err in its determination that two claims existed. 
III.  Probate Courts Sua Sponte Interim Order
Miller argues the probate court erred in conducting its own investigation pursuant to its Sua Sponte Interim Order.  Miller argues the probate courts actions were improper and in violation of the Code of Judicial Conduct citing to Rule 501, SCACR.  We disagree.
Rule 614, SCRE, governing the calling and interrogation of witnesses by the court, provides: 

 (a) Calling by Court.  In extraordinary circumstances, the court may, on its own motion or at the suggestion of a party, call witnesses, and all parties are entitled to cross-examine witnesses thus called.  Before calling a courts witness, the court shall afford the parties a hearing on the matter outside the presence of the jury.
 (b) Interrogation by Court.  When required by the interests of justice only, the court may interrogate witnesses.

The testimony provided by Crosby, as compared with Millers prior filings with the probate court, indicates a discrepancy in his representations to the probate court.  We find these circumstances are extraordinary and meet the requirements pursuant to Rule 614, SCRE, allowing the probate court to call an additional witness.  In addition, the probate court afforded both parties notice of Clarks testimony and the opportunity to cross-examine her, and therefore, neither was prejudiced by her testimony.  
IV.  Invalidation of the Claim Release 
Miller asserts the probate court erred in finding the claim release executed by DHHSs in favor of the South Carolina Department of Transportation invalid.  Miller contends DHHS did not make a claim against the real property purchased by the DOT.  Therefore, the probate court improperly raised the issue on its own.  
In our review of the record, we find this issue was not properly preserved for appellate review.  In order to preserve an issue for appellate review, the issue must have been raised to and ruled upon by the trial court.  Mizell v. Glover, 351 S.C. 392, 399, 570 S.E.2d 176, 180 (2002).  Miller did not object on the record to the judges raising of this issue.  Accordingly, we are unable to consider it on appeal.  
V.  Invalidation of Doris Popes Claim
Miller also argues the probate court erred in invalidating Doris Popes claim in its final order.  His argument is similar to the argument made with regard to the probate courts invalidation of the claim release.  Miller asserts DHHS did not contest this claim, and therefore, the probate court improperly invalidated her claim.  
Again, we find this issue was not properly preserved for appellate review because Miller failed to make an objection on the record.  Mizell, 351 S.C. at 399, 570 S.E.2d at 180.  Therefore, we find the probate court did not err in addressing the validity of Popes claim.  
CONCLUSION
The probate court did not err in determining the circuit court did not have jurisdiction over this claim brought by DHHS and in determining this claim is a separate and distinct claim from DHHSs prior claim relating to Washingtons tort claim against a third party.  In addition, the probate court did not act improperly in issuing its Sua Sponte Interim Order requesting additional testimony and evidence.  Finally, Millers claims that the probate court erred in addressing the validity of the claim release executed by DHHS and the validity of Popes claim against Washingtons estate were not properly preserved for appellate review.  Therefore, the order of the circuit court affirming the probate court is 
AFFIRMED.  
HUFF, KITTREDGE, and BEATTY, JJ., concur.

1 We decide this case without oral argument pursuant to Rule 215, SCACR.