# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

Glenn E. Vanover, Petitioner,

v.

State of South Carolina, Respondent.

Appellate Case No. 2016-001917

Appeal From Lexington County
Perry H. Gravely, Circuit Court Judge

Opinion No. 5799
Submitted March 2, 2020 – Filed February 3, 2021

**AFFIRMED**

Jonathan McKey Milling, of Milling Law Firm, LLC, of
Columbia, for Petitioner.

Attorney General Alan McCrory Wilson, Senior
Assistant Deputy Attorney General Melody Jane Brown,
and Deputy Attorney General Donald J. Zelenka, all of
Columbia, for Respondent.

**HEWITT, J.:** Glenn Edwin Vanover (Petitioner) appeals the circuit court order denying his application for Post-Conviction Relief (PCR). A jury convicted him in 2012 of two counts of first degree criminal sexual conduct with a minor under section 16-3-655(A)(1) of the South Carolina Code (2015). He received concurrent twenty-six-year sentences. This court affirmed the convictions and sentence on appeal.

Petitioner argues his trial counsel was ineffective in failing to investigate and present evidence that the alleged victim—Petitioner's daughter—previously made and recanted an allegation of inappropriate conduct against a middle school teacher. We agree with the PCR court that Petitioner did not establish this evidence would have been admitted or that he was prejudiced. Thus, we affirm.

## BACKGROUND

This is a "delayed reporting" case. Daughter was sixteen years old at the time of trial and testified the sexual abuse occurred when she was younger. She alleged this began sometime between her second and fourth grade years and stopped when she was in fifth grade, around the age of ten or eleven.

Trial Testimony

Daughter described how the alleged abuse began and progressed. She said the first instance happened when she was at home with Petitioner and her older brother. Daughter claimed Petitioner invited her to watch TV in his bedroom and groped her while they were both clothed. She said Petitioner told her not to tell anyone.

Daughter explained the next instance of abuse involved sexual intercourse after Petitioner again asked Daughter to come into his bedroom. She testified she was certain they had intercourse because it was painful.

Daughter said she did not call out for help because she was afraid. She said Petitioner told her not to tell anyone about the interaction and warned her that she would be in a lot of trouble. Daughter claimed Petitioner abused her again on other occasions and that this always occurred while Melanie Vanover (Mother) was at work.

Around the time Daughter was in the fifth grade, the family moved into a house on property owned by Petitioner's mother (Grandmother). Daughter claimed Petitioner abused her once in this residence when she was about ten years old. As noted above, Daughter said the abuse stopped when she was ten or eleven.

Several witnesses acknowledged Daughter first told Mother about the alleged abuse roughly two years later. There is conflicting testimony about whether Daughter recanted these first allegations. We will discuss that shortly.

Two years after that first disclosure—and roughly four years after the alleged abuse stopped—Daughter disclosed the abuse to a teacher, Michael Horne. Criminal charges followed shortly thereafter.

Petitioner's defense relied on potential inconsistencies in Daughter's memory about the abuse's frequency. Daughter initially said the abuse happened about three times per month but later said it did not happen every month and instead occurred "very occasionally." Daughter ultimately said Petitioner abused her about three times a year, not three times a month.

Petitioner and other family members also claimed Daughter manufactured the allegations as revenge. Mother testified Daughter's first disclosure occurred on her brother's sixteenth birthday and appeared to be retaliation for Petitioner refusing to let Daughter take a car ride with her brother and his friends. Mother said Daughter "showed no emotion whatsoever" when discussing the abuse, gave differing accounts of the abuse over time, and eventually admitted she was lying.

Grandmother agreed with Mother's account, as did Petitioner. Petitioner and Mother hypothesized Daughter's disclosure to her teacher two years later resulted from Petitioner punishing Daughter for poor grades and skipping school.

Daughter disputed that her first disclosure occurred on her brother's birthday and adamantly denied recanting the allegations. Daughter said her family confronted her about the allegations and shunned her when she refused to recant.

Several witnesses testified about the disclosures that led to criminal charges. Horne—Daughter's teacher—said Daughter cried. The school resource officer, Deputy Jonathan Grooms, testified Daughter told him that the abuse occurred when she was between the ages of eight and ten and that the incidents happened in her home. Grooms recalled that Daughter had a blank look on her face, did not want to talk to him, and that he had to pull the information out of her.

Investigator Marty Longshore interviewed Daughter as well. He explained Daughter told him the abuse occurred over a period of time when she was between the ages of eight and eleven. He said Daughter was reserved, shy, and reluctant to write a statement, but Daughter eventually spoke to him about what happened and provided a statement. He remembered Daughter cried and was upset, reserved, and shook while writing the statement.

An assessment worker with the Department of Social Services interviewed Daughter as well. This person visited Petitioner's residence to investigate the allegations and said that when she told Petitioner the reason for her visit, Petitioner announced that nobody had ever accused him of sexually abusing Daughter and that "he and his wife had a wonderful sex life, so why would he need to go elsewhere."

PCR

The alleged ground for PCR relates to evidence that Daughter previously accused a middle school teacher of some sort of inappropriate interaction. This appears to have occurred in the same general time period when Daughter first told Mother about the alleged sexual abuse at issue here.

The precise allegation is unclear. One of Daughter's seventh grade teachers—we will call him John Doe—explained at the PCR hearing that he received a phone call from Petitioner and Mother the day after he gave Daughter detention for talking with another student during class. According to Doe, Mother said Daughter accused Doe of asking Daughter and one of her friends about the color of their underwear, when they had their periods, and whether they had boyfriends.

Daughter was not on the phone call and Doe never spoke to Daughter about the allegation. Doe explained that he informed school administration and that he understood the allegation to have been recanted the next day. Doe also said the school took no action against him and Daughter was removed from his classroom.

Neither Mother nor Daughter testified at the PCR hearing. As noted above, Doe spoke only with Mother and with school administration about this incident.

Trial counsel gave a different account of this incident at the PCR hearing. Counsel explained he had been aware Daughter previously made some sort of complaint against a former teacher and said he understood the incident to have been minor. Counsel said Petitioner and other members of the family did not provide "a lot of substance" when counsel discussed it with them. Counsel said he learned of the incident from a letter Mother wrote. Mother's letter said Daughter "almost had a teacher fired because she [Daughter] said he [Doe] said, 'what color is your underwear.' But he [Doe] said, 'no one wants to see that, pull your pants up.'"

Trial counsel said there were several reasons he did not speak with Doe about this incident. He said that he took Mother's letter at face value and that neither the letter nor his conversations with Petitioner and Petitioner's family suggested the incident was noteworthy or relevant. Counsel explained that he could see himself telling a teenage girl to pull her pants up and that nobody wanted to see her underwear. Counsel also said nobody ever asked him to locate Doe, contact Doe, or call Doe as a witness.

Petitioner disputed trial counsel's recollection. He testified he told trial counsel about Doe, assumed counsel would speak to Doe as part of his investigation, and always assumed counsel would call Doe as a witness. Petitioner believed the incident with Doe was evidence Daughter "had a propensity" to make up "stories."

The PCR court denied relief. The court did not specifically rule on whether trial counsel was deficient. The court grounded its denial of relief on the finding that Petitioner failed to establish Doe's testimony would have been admissible or that trial counsel's failure to introduce Doe's testimony prejudiced Petitioner.

## ISSUE ON APPEAL

Whether the PCR court erred in concluding Petitioner did not establish that Doe's testimony about the alleged false allegation would be admissible.

## STANDARD OF REVIEW

"Our standard of review in PCR cases depends on the specific issue before us. We defer to a PCR court's findings of fact and will uphold them if there is evidence in the record to support them." *Smalls v. State*, 422 S.C. 174, 180, 810 S.E.2d 836, 839 (2018); *see also Strickland v. Washington*, 466 U.S. 668, 698 (1984) (noting "both the performance and prejudice components of the ineffectiveness inquiry are mixed questions of law and fact"). "We review questions of law de novo, with no deference to [the PCR court]." *Smalls*, 422 S.C. at 180–81, 810 S.E.2d at 839.

## LAW/ANALYSIS

Petitioner's argument has two components. First, Petitioner claims trial counsel was deficient for not speaking with Doe. Second, Petitioner claims counsel was deficient for failing to present evidence of Daughter's false allegation against Doe.

As noted above, the PCR court did not rule on whether trial counsel was deficient for not speaking with Doe, but instead grounded its denial of relief on the finding that Petitioner failed to establish Doe's testimony would have been admissible and failed to establish prejudice.

We will follow the same course. *Strickland* explains a court is not required to address all aspects of a claim that trial counsel was ineffective if the absence of proof on any part precludes relief. 466 U.S. at 697. We therefore turn to Petitioner's argument that trial counsel was deficient for failing to present evidence Daughter leveled a false allegation against Doe.

The rules of evidence recognize several avenues for impeaching a witness. Common methods are prior bad acts showing motive or absence of mistake, evidence of the witness's general character for truthfulness, and certain prior convictions. *See* Rules 404(b), 608(a), and 609, SCRE. This is not a complete list. The point is that with

one exception we mention later in this opinion, the rules of evidence govern how a party attacks a witness's credibility.

Petitioner argues testimony about Daughter's allegations against Doe would be admissible under three rules:  Rules 608, 404(b), and 613, SCRE.  As we explain below, we respectfully disagree.

## Testimony Regarding Character for Truthfulness

Rule 608 allows evidence in the form of an opinion regarding a witness's character for truthfulness or untruthfulness.  It also permits asking a witness about specific instances of that witness's conduct if the conduct is probative of the witness's truthfulness or untruthfulness.  *Id.*

We respectfully disagree with Petitioner's claim that this rule would permit him to present his own testimony, Mother's testimony, or Doe's testimony about Daughter's allegations against Doe.  Rule 608(b) explicitly bars extrinsic evidence related to specific instances of a witness's conduct.  *See also Mizell v. Glover*, 351 S.C. 392, 401, 570 S.E.2d 176, 180 (2002) ("Rule 608(b) allows specific instances of conduct to be inquired into on cross, but does not allow those instances of conduct to be proved by extrinsic evidence.").  Thus, although there is no question trial counsel could have asked Daughter about the Doe allegation, Rule 608 would not be a vehicle for anyone else to offer testimony regarding the allegation.

## Prior Bad Act Testimony

Rule 404(b) allows evidence of a witness's prior bad acts if offered "to show motive, identity, the existence of a common scheme or plan, the absence of mistake or accident, or intent."  The prior bad act must be proved by clear and convincing evidence if it did not result in a conviction.  *State v. Clasby*, 385 S.C. 148, 155, 682 S.E.2d 892, 895 (2009).  Evidence of prior bad acts also remains subject to Rule 403, SCRE's probative versus prejudicial balancing test.  *Id*. at 155–56, 682 S.E.2d at 896.

There are two reasons we believe it is doubtful the trial court would have allowed testimony from Petitioner, Mother, or Doe under Rule 404(b).

First, the testimony about the Doe allegation was varying and inconsistent.  Trial counsel testified Mother's letter did not describe the allegation as having any sexual connection and that neither Petitioner nor his family ever asked counsel to contact Doe.  Doe said he had been accused of making an inappropriate comment to Daughter and her friend, but his version was inadmissible hearsay because he spoke

only with Mother, not Daughter. Petitioner's testimony went further and was different than everyone else's. Petitioner claimed Daughter accused Doe of making an inappropriate comment and of smacking Daughter and her friend on the behind. There was no first-hand account of Daughter's accusation against Doe. Neither Daughter nor Mother testified at the PCR hearing.

This matters because the trial court has discretion to exclude evidence if admitting the evidence would lead to a "trial within a trial" that might confuse the issues and mislead the jury. *State v. Cottrell*, 421 S.C. 622, 641, 809 S.E.2d 423, 434 (2017). The variance in witness testimony and the lack of a first-hand account make it far from clear the testimony would be admitted.

Second, the Doe allegation's probative value is questionable. There do not appear to be many South Carolina cases involving prior false allegations made by a victim in a criminal sexual conduct case. Our supreme court articulated the standards for admitting such evidence in *State v. Boiter*, 302 S.C. 381, 383–84, 396 S.E.2d 364, 365 (1990). *Boiter* explains a trial court should determine whether the prior allegation is indeed false before considering "remoteness in time" and "factual similarity between [the] prior and present allegations to determine relevancy." *Id*.

This framework appears to follow the same general approach that applies in other jurisdictions, and there have been lots of similar cases in other jurisdictions. Speaking generally, prior false allegations are allowed if the allegations "suggest a pattern" that casts "substantial doubt" on the charges at issue. *People v. Diaz*, 988 N.E.2d 473, 477 (N.Y. 2013) (quoting *People v. Mandel*, 401 N.E.2d 185, 187 (N.Y. 1979)). One formulation of the rule is that "if the prior accusations are similar enough to the present ones and shown to be false, a motive can be inferred and from it a plausible doubt or disbelief as to the witness' present testimony." *White v. Coplan*, 399 F.3d 18, 26 (1st Cir. 2005).

The rationale for excluding prior false accusations that do not have a significant degree of similarity to the charge at issue is that those false claims lack any meaningful probative value. As one noted jurist explained, "[t]he fact that a teenage girl has a disordered past and lies a lot (who doesn't?) does not predict that she will make up stories about having sex." *Redmond v. Kingston*, 240 F.3d 590, 591 (7th Cir. 2001) (Posner, J.). In other words, evidence that a witness has lied in the past has questionable value "since very few people, other than the occasional saint, go through life without ever lying." *Id*. at 593.

Our review of these decisions leads us to believe that it is doubtful the trial court would have admitted evidence of Daughter's allegations against Doe.

At one end of the spectrum are cases in which the purported victim's prior false allegations were strikingly similar to the allegations being tried. *State v. Cox*, for example, was a rape trial. 468 A.2d 319 (Md. 1983). The victim had previously accused another person of sexual misconduct before recanting the allegation at trial. *Id.* at 320–21. Another similar case is *White v. Coplan*, in which the prior false allegations "bore a close resemblance" to the charges at issue. 399 F.3d at 24. A third example is *State v. Dennis*, which is of the same character as the others. 893 A.2d 250, 266–67 (R.I. 2006).

At the other end of the spectrum are lies that have no similarity whatsoever to the accusations on trial. For example, the fact that the alleged victim previously took her mother's car without permission, wrecked the car, and lied about the circumstances before recanting had no probative value with respect to the victim's allegation that she was raped. *State v. Wilson*, 256 S.W.3d 58, 60–62 (Mo. 2008), *abrogated on other grounds by Mitchell v. Kardesch*, 313 S.W.3d 667 (Mo. 2010). Less-extreme examples—all of them in sex crime cases—include cases where the alleged victim previously accused someone of physical abuse, excessive discipline, and peering at the victim under a bathroom stall. *See Lopez v. State*, 18 S.W.3d 220, 225–26 (Tex. Crim. App. 2000); *State v. Botelho*, 753 A.2d 343, 346–47 (R.I. 2000); *State v. Ellsworth*, 709 A.2d 768, 772–74 (N.H. 1998). We also note *State v. Brum*, a case affirming a trial court's decision to exclude evidence of a prior false allegation even though that allegation and the conduct for which the defendant was on trial plainly had a sexual nature. 923 A.2d 1068, 1074–75 (N.H. 2007).

In light of these cases (and others), we find there is no reasonable probability a trial court would have found Daughter's allegations against Doe to be probative evidence of motive, a common scheme or plan, or any other ground recognized by Rule 404(b). Even adopting Petitioner's version of the Doe allegation—that Doe made an inappropriate comment before smacking Daughter and her friend on their behinds— the allegation bears no similarity to Daughter's allegation that Petitioner fondled her and sexually abused her several times, over several years.

Petitioner argues the allegations against him are sufficiently similar to the Doe allegations because both are evidence that Daughter manufactures accusations to avoid punishment and improve her circumstances. Respectfully, this characterization of these incidents is too broad and generic. The events are vastly more different than they are similar. We again note *Boiter*, which held "factual similarity" was relevant when a trial court is deciding whether to admit evidence of a victim's prior false allegation. 302 S.C. at 383–84, 396 S.E.2d at 365.

It is worth mentioning that any restrictions imposed by the rules of evidence must yield if they conflict with the defendant's right to effective cross-examination; a right that is guaranteed by both the State and Federal Constitution. *See Davis v. Alaska*, 415 U.S. 308, 316–17 (1974) ("We have recognized that the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination."); *State v. Cooper*, 291 S.C. 351, 355, 353 S.E.2d 451, 454 (1987). Some of the cases we cite in our analysis of Rule 404(b) did not turn on that rule, but on whether preventing evidence of the prior false accusation violated the defendant's constitutional rights. *See, e.g., Botelho*, 753 A.2d at 345–47; *Lopez*, 18 S.W.3d at 223. We cite these cases because their discussion of "similarity" between prior false allegations and the charges being tried seem particularly germane to the purposes Rule 404(b) identifies for potential evidence.

Prior Inconsistent Statement

Rule 613 explains how to cross-examine a witness who has previously given a statement that contradicts the witness's in-court testimony. Here, the argument seems to be that Petitioner could have asked Daughter about her allegations against Doe and called other witnesses if Daughter denied making the accusation.

Although a witness may generally be cross-examined on anything, even a collateral matter, as credibility is always an issue, extrinsic evidence of a prior inconsistent statement is not admissible if the prior statement concerns a collateral matter. *See* 28 Charles Alan Wright & Victor J. Gold, *Federal Practice & Procedure Evidence* § 6206 (2d ed. 2012). Thus, and as is true under Rule 608, Petitioner could have asked Daughter about the Doe allegation but would be stuck with her answer.

A skeptical reader might respond by claiming that Daughter's credibility was not a collateral matter, but was the very heart of the case. That is true of any case relying chiefly on witness testimony. We understand and expressly do not overlook the attraction of allowing testimony that an accuser in this sort of case has made a previous allegation of improper conduct and then recanted that allegation. Even so, this case was not about Daughter's purported allegation against Doe, and as we have already discussed, the nature of that claim—a false report of an inappropriate comment that was immediately recanted—is worlds apart from Daughter's claim that Petitioner repeatedly sexually abused her over a prolonged period of time. *See also State v. Finley*, 300 S.C. 196, 201, 387 S.E.2d 88, 90 (1989) ("[T]he state's interest in protecting criminal sexual conduct victims is stronger than the right of a defendant to attack such a victim's character in a manner that has limited or no relevance to the question of guilt.").

<u>Failure to Cross-Examine Daughter with Doe Allegation</u>

Petitioner argues that at a minimum, trial counsel was deficient for failing to ask Daughter about the Doe allegation.

We have no idea what Daughter's answer or explanation for the Doe allegation would have been. Daughter did not testify at the PCR hearing. We do not see how we could find this alleged deficiency to be prejudicial without some sense of what Daughter's explanation would have been. *See*, *e.g.*, *Glover v. State*, 318 S.C. 496, 498, 458 S.E.2d 538, 540 (1995) (finding the absence of PCR testimony from alleged alibi witnesses meant petitioner "could not establish any prejudice from counsel's failure to contact these witnesses").

We also note Daughter testified at trial that she was removed from her family's home as a result of her allegations against Petitioner and that she lived in a series of foster homes before being adopted by her uncle (her mother's brother) and his wife. Whatever answer Daughter might have given if cross-examined about the Doe allegation, we question whether that answer would have blunted the force of Daughter's testimony that her allegations against Petitioner did not improve her home life, but instead threw that life into turmoil.

**CONCLUSION**

For the foregoing reasons, the PCR court's denial of relief is

**AFFIRMED.**[1]

**GEATHERS, J., concurs.**

**LOCKEMY, C.J., dissenting:** I respectfully dissent. In my view, trial counsel provided ineffective assistance of counsel by failing to investigate and interview Doe and for failing to elicit testimony related to Daughter's accusations against Doe. Trial counsel had a duty to investigate Daughter's prior accusations and this duty was even more acute given trial counsel's theory of the case—that Daughter manufactured the accusation to avoid punishment. Trial counsel's reason for failing to investigate the accusation was that he "could see [him]self telling some young girl 'to pull your pants up.' Nobody wants to see [the] color [of] your underwear." However, whether trial counsel could see himself saying this to a student was not a

---

[1] We decide this case without oral argument per Rule 215, SCACR.

sufficient reason for his failure to see the relevance of Daughter's potential false accusation against Doe.

Although there was a difference between what Petitioner and Mother told trial counsel regarding Daughter's accusations, in either scenario, trial counsel was informed that Daughter made a false accusation against Doe to avoid punishment and this was the same premise upon which Petitioner's defense rested. In my view that was enough information to require that trial counsel at a very minimum talk to Doe. Had trial counsel done so, he would have understood that the conduct was much more sexually improper than he testified he understood it to be at the PCR hearing. Thus, trial counsel provided ineffective assistance of counsel by failing to investigate.

In my view Petitioner was prejudiced because trial counsel could have presented evidence of Daughter's accusation against Doe. Specifically, trial counsel could have asked Daughter whether she had accused Doe of asking her inappropriate sexual questions. If she admitted to having accused Doe of asking inappropriate questions, then the jury would have heard her admission, and trial counsel would have been able to cross-examine Daughter further under *Boiter*. *See* 302 S.C. at 383–84, 396 S.E.2d at 365. I respectfully disagree with the majority's analysis of the *Boiter* factors. We must examine "the factual similarity between [the] prior and present allegations to determine relevancy." *Id*. A key factor in this case is Petitioner's stance that Daughter made accusations against others to avoid punishment. The majority believes that Daughter's allegations against Doe were much less egregious than those she made against Petitioner. No doubt that is so. However, they were still allegations of inappropriate conduct of a sexual nature that Daughter claimed were directed at her. Petitioner's entire defense rested on the foundation that Daughter had made up the allegations against him to avoid punishment and that she had recanted her allegations about the conduct. Similarly, Doe's statement indicated that he was about to punish her for conduct and then she accused him of inappropriate conduct of a sexual nature, which she later recanted. The trial court never had an opportunity to rule upon whether Doe's statement was true or false, and the PCR court never made a finding that Doe's testimony was untrue. Further, the accusations that Doe referenced were not so remote in time compared to those against Petitioner because the two accusations were between one and three years apart. Using the factors set out in *Boiter*, the accusations against Doe would have been admissible.

On the other hand, if Daughter had denied accusing Doe, trial counsel could have offered evidence regarding the accusation against him. *See Clinebell v.*

*Commonwealth*, 368 S.E.2d 263, 266 (Va. 1988) ("Consequently, in a sex crime case, the complaining witness may be cross-examined about prior false accusations, and if the witness denies making the statement, the defense may submit proof of such charges."). Rule 613, SCRE, states, "If a witness does not admit that he has made the prior inconsistent statement, extrinsic evidence of such statement is admissible." In my view Daughter's statement regarding a false accusation was not a collateral matter. *See State v. Williams*, 409 S.C. 455, 469, 761 S.E.2d 770, 778 (Ct. App. 2014) (stating evidence is not collateral if is directly relevant to the ultimate issue at trial: a defendant's innocence).

Further, because there was no physical evidence and Petitioner's guilt came down to witness credibility, there is a reasonable probability that but for trial counsel's failure to investigate and elicit testimony, the result of Petitioner's trial would have been different. *See Strickland*, 466 U.S. at 694 (1984) ("The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.").

In summary, trial counsel was ineffective for failing to investigate and his failure to do so prejudiced Petitioner.